SOUTHWEST MARINE, INC.

v.

The UNITED STATES.

No. 738–83C.

United States Claims Court.

Jan. 16, 1984.

William B. Barton, Jr., McLean, Va., for plaintiff. Maurice J. Mountain, McLean, Va., of counsel.

Robert A. Reutershan, Washington, D.C., with whom were Acting Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and M. Susan Burnett, Washington, D.C., for defendant. Stephen G. Berman, Valerie J. Harp, and David Nadler, Naval Sea Systems Command, Department of the Navy, and Pamela G. Steele, Small Business Admin., Washington, D.C., of counsel.

Joseph J. Petrillo, Washington, D.C., with whom were Thomas J. Touhey and Bowman Conner Touhey & Petrillo, Washington, D.C., for intervenor.

## OPINION

WHITE, Senior Judge.

This is a suit for declaratory and injunctive relief by Southwest Marine, Inc. ("Southwest" or "the plaintiff") under 28 U.S.C. § 1491(a)(3), *as amended by* section 133(a) of Public Law 97–164 (96 Stat. 25, 39–40).

The complaint was filed in the morning of December 16, 1983, along with an application for a temporary restraining order.

A hearing on the application for a temporary restraining order was held in the afternoon of December 16, and the application was denied by the court orally from the bench. The denial was reaffirmed in a written order filed on December 19, 1983.

A trial on the merits was held on December 28, 1983. A petition for leave to intervene was filed on December 28, before the beginning of the trial, by San Diego Iron & Steel Fabricating, Inc. ("San Diego"); the petition was granted by the court at the outset of the trial; and counsel for the intervenor participated in the trial.

Briefs were filed by the parties, including the intervenor, on January 6, 1984.

### The Facts

This case principally involves a Request for Proposals ("the RFP") which the Naval Sea Systems Command issued to Southwest and some other companies that were known to the Navy as small business concerns engaged in the performance of repair, alteration, and maintenance work on naval vessels. The RFP was numbered N000–24–83–R–8544 and it covered a requirement for repair, alteration, and maintenance work on the guided missile frigate USS BROOKE (FFG–1), with an option for work on the USS SCHOFIELD (FFG–3). The RFP requested competitive proposals for the work, and stated that it was set aside for participation by small business concerns. The RFP further stated that the USS BROOKE would commence a Selected Restricted Availability ("SRA") for the work in the successful offeror's facility on February 20, 1984, and that the work was to be completed not later than April 13, 1984. The RFP, as originally issued, announced a scheduled award date of November 22, 1983. The Navy, however, later issued a request for "best and final offers," which extended the scheduled award date to December 23, 1983.

The USS SCHOFIELD (FFG–3) is also a guided missile frigate. This vessel is scheduled to commence an SRA for its repair, etc., on July 16, 1984, and the work is to be completed not later than September 7, 1984.

The final date (as revised) for the receipt of "best and final" proposals in response to the RFP was October 4, 1983; and the Navy Department received three proposals. Southwest was one of the offerors, and San Diego was another.

From its inception, Southwest has competed for and has received government contracts, principally contracts from the Navy

Department, as a small business concern eligible for contracts set aside for small business. In this connection, it has been the corporate policy of Southwest to maintain its manpower at such levels that it will retain its status as a small business and thus be eligible to bid on government procurements that are set aside for small business concerns.

In order to maintain its status as a small business, Southwest has relied on the regulations of the Small Business Administration for guidance, particularly 13 C.F.R. § 121.3–8, "Definition of small business for Government procurement." This section begins with the following statement:

A small business concern for the purpose of Government procurement is a concern, including its affiliates, which is independently owned and operated, is not dominant in the field of operation in which it is bidding on Government contracts and can further qualify under the criteria set forth in this section * * *.

Paragraph (b) of section 121.3–8 then provides in part as follows:

(b) *Manufacturing.* Any concern bidding on a contract for a product it manufactured is classified:

*    *    *    *    *    *

(2) As small if it is bidding on a contract for a product classified within an industry set forth in Schedule B of this part and its number of employees does not exceed the size standard established for that industry.

Schedule B prescribes an "Employment size standard (number of employees)" for each of many types of manufacturing industries. The term "number of employees" is defined in a footnote to mean "the average employment of any concern and its affiliates based on the number of persons employed during the pay period ending nearest the last day of the third month in each calendar quarter for the preceding four quarters." Schedule B fixes at 1,000 the maximum number of employees for small companies in the ship building and repairing industry.

At all times relevant to this case, Southwest's maximum number of employees has been less than 1,000, under the Schedule B formula.

It should be explained that, in addition to 13 C.F.R. § 121.3–8, defining small business for government procurement, the regulations of the Small Business Administration include in 13 C.F.R. § 121.3–2 some general definitions of terms. Since 1976, paragraph (t) of this section has defined "number of employees" to mean "the average employment of any concern, including the employees of its domestic and foreign affiliates, based on the number of persons employed on a full-time, part-time, temporary, or other basis during each of the pay periods of the preceding 12 months.   * * * "

In the early part of 1982, Southwest's status as a small business was protested by a competitor in connection with a Navy procurement that was set aside for small business. The protest was denied by the Regional Administrator of Region IX, Small Business Administration, in a determination dated March 31, 1982. The determination stated in part as follows:

* * * A concern bidding on a contract for shipbuilding and repairing is considered to be small if the average employment of the concern and its affiliates, based on the number of persons employed during the pay period ending nearest the last day of the third month in each calendar quarter for the preceeding [sic] four quarters, does not exceed 1,000 employees. 13 C.F.R. § 121.3–8(b)(2), Schedule B.
The average number of employees of SWM [Southwest Marine, Inc.], together with its affiliates, as of February 12, 1982, is 931. SWM satisfies the applicable size standard. * * *

The Regional Administrator then determined that the present plaintiff was independently owned and operated, and that it was not dominant in its field of operations. The determination ended with the following statement:

Accordingly, it is determined that so long as the total number of employees of

SWM, together with its affiliates, does not exceed 1,000, Southwest Marine, Inc. may self-certify as a small business concern for the purpose of federal procurements which utilize 1,000 employees as the applicable size standard.

Following the March 31, 1982, determination by the Regional Administrator, Southwest continued to utilize the quarterly method of determining its number of employees, continued to bid on Navy procurements that were set aside for small business, and, in submitting such bids, self-certified itself as a small business concern, pursuant to the authorization from the Regional Administrator of Region IX, Small Business Administration.

In 1983, with respect to still another Navy procurement for ship repair work that was set aside for small business, and on which Southwest submitted the bid that was most advantageous to the Government, Southwest's status as a small business was again protested by a competitor. The protest was allowed in a decision dated December 6, 1983, by the Regional Administrator of Region IX, Small Business Administration, and Southwest was held to be ineligible to receive the contract involved in that proceeding. The Regional Administrator referred to the previous decision of March 31, 1982, and said that it "constituted an erroneous interpretation of the agency's own regulations." The Regional Administrator's determination further stated in part as follows:

> * * * [I]t was and is the intent of SBA that the number of employees of a concern be determined in accordance with the language set forth in 13 C.F.R. § 121.3–2(t), effective May 3, 1976.
>
> *   *   *   *   *   *
>
> Accordingly, the Regional Administrator finds Southwest Marine, Inc. to be other than a small business for purposes of the contract in question or any other government contract subject to an average employment size standard of 1,000 or less. Southwest Marine, Inc. shall not self-certify itself as a small business on any government contract subject to an aver-

age employment size standard of 1,000 employees or less until it is first recertified by this office or the SBA Size Appeals Board.

Promptly after receiving the Regional Administrator's determination of December 6, 1983, Southwest notified the Navy Department concerning such determination.

On December 12, 1983, Southwest took an appeal to the Office of Hearings and Appeals of the Small Business Administration in Washington, D.C., from the size determination of December 6, 1983, by the Regional Administrator of Region IX. The appeal is still pending before the Size Appeals Board of the Small Business Administration.

When the Navy Department learned of the December 6, 1983, decision by the Regional Administrator, the Navy Department was engaged in an evaluation of the three proposals which it had received in response to the RFP, including the proposal submitted by Southwest; and the Navy Department continued such evaluation notwithstanding the December 6, 1983, decision by the Regional Administrator. However, the Navy Department informed Southwest that if the latter's proposal were determined to be the one most advantageous to the Government, the Navy Department could not properly award the contract to Southwest so long as the adverse determination by the Regional Administrator remained in effect.

This was followed on December 16, 1983, by the filing of Southwest's complaint with the court, seeking an order which would direct the Navy Department to consider Southwest's proposal on its merits, without regard to the size determination of December 6, 1983, by the Regional Administrator of Region IX, Small Business Administration.

The evaluation by the Navy Department of the "best and final" proposals that had been submitted pursuant to the RFP was completed on or about December 19, 1983. After the evaluation results were reviewed, it was determined that Southwest had scored the highest number of points in the

evaluation and had submitted the proposal which was most advantageous to the Government, from the standpoint of price and other pertinent factors. However, as the December 6, 1983, decision by the Regional Administrator of Region IX, Small Business Administration, that Southwest was other than a small business was still outstanding, it was concluded that the Navy Department could not properly award the contract to Southwest.

It was determined that San Diego had received the second-highest number of points in the evaluation process, and that San Diego's proposal was also advantageous to the Government, from the standpoint of price and other pertinent factors. On December 21, 1983, the Navy Department awarded to San Diego the contract for the repair, etc., of the USS BROOKE, with an option for the repair of the USS SCHO-FIELD.

*Discussion*

■ Section 1491(a)(3) of title 28, United States Code, *as amended by* section 133(a) of Public Law No. 97–164 (96 Stat. 25, 39–40), confers upon the United States Claims Court jurisdiction to grant declaratory judgments and injunctive relief in contract actions filed before contract award. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1374 (Fed.Cir.1983) (*en banc*). The Claims Court's predecessor, the United States Court of Claims, lacked such equitable authority.

*Grimberg* makes it clear, though, that this new power for the court does not grant any new substantive right to prospective complainants. Rather, the legislation merely provides an additional remedy in support of the previously existing right of bidders on government contracts to have their bids fairly and honestly considered. *Id.* at 1372. As authority for this proposition, the *Grimberg* court quotes the following statement which Senator Dole, manager of the bill that later became Public Law No. 97–164, made on the floor of the Senate: "By conferring jurisdiction upon the Claims Court to award injunctive relief in the preaward

stage of the procurement process, the bill does not intend to alter the current state of the substantive law in this area." 127 Cong.Rec. S14964 (daily ed. Dec. 8, 1981). *See also* S.Rep. No. 275, 97th Cong., 1st Sess. 22–23, U.S.Code Cong. & Admin.News 1982, 11. *Harris Data Communications, Inc. v. United States,* 2 Cl.Ct. 229, 236–37 (1983).

According to earlier court decisions (*e.g., Heyer Products Co. v. United States,* 135 Ct.Cl. 63, 69, 140 F.Supp. 409, 412–13 (1956); *Keco Industries v. United States,* 192 Ct.Cl. 773, 780, 428 F.2d 1233, 1237 (1970)), the submission by a responsible bidder of a responsive bid pursuant to an invitation from the Government creates between the parties an implied-in-fact contract that the bid will be fairly and honestly considered. Before the amendment of 28 U.S.C. § 1491 by section 133(a) of Public Law No. 97–164, the only remedy of a bidder for a breach of this contractual right was an action to recover bid preparation costs. *Keco Industries, Inc. v. United States, supra,* 192 Ct.Cl. at 781–82, 428 F.2d at 1237. The new legislation now empowers this court to grant declaratory and injunctive relief as an additional remedy. The right to be vindicated, however, is still the contractual right to fair and honest consideration when a responsible bidder submits a responsive bid on a government contract pursuant to an invitation from the Government. *Heli-Jet Corp. v. United States,* 2 Cl.Ct. 613, 618 (1983); *Gibraltar Industries, Inc. v. United States,* 2 Cl.Ct. 589, 590 (1983); *Ingersoll Rand Co. v. United States,* 2 Cl.Ct. 373, 375 (1983); *Harris Data Communications, Inc. v. United States, supra,* 2 Cl.Ct. at 237.

The government agency which has the primary duty to give such a bid fair and honest consideration is necessarily the contracting agency. The fact that the Navy Department fairly and honestly considered Southwest's proposal in the present case is shown by the circumstance that Southwest's proposal received the highest number of points in the Navy Department's evaluation process and was determined to be the proposal that was most advantageous to the

Government. The Navy Department was prepared to award the contract on the USS BROOKE (with option for work on the USS SCHOFIELD) to Southwest, but for the December 6, 1983, determination by the Regional Administrator of Region IX, Small Business Administration, which declared that Southwest was other than a small business, not only with respect to the procurement involved in that proceeding but also with respect to "any other government contract subject to an average employment size standard of 1,000 or less."

■ The Navy Department, in connection with the award on the RFP, was not authorized to make an independent study of the question and decide whether the Regional Administrator, in the size determination of December 6, 1983, was correct or incorrect in relying on the definition of "number of employees" for general purposes in 13 C.F.R. § 121.3–2(t), rather than the definition of "number of employees" for the specific purpose of government procurements set out in 13 C.F.R. § 121.3–8(b)(2) and the related Schedule B. *Gibraltar Industries, Inc. v. United States, supra,* 2 Cl.Ct. at 591; *Speco Corp. v. United States,* 2 Cl.Ct. 335, 336 (1983); *cf. Related Industries, Inc. v. United States,* 2 Cl.Ct. 517, 520–21 (1983). The Navy Department was confronted with the statutory admonition in 15 U.S.C. § 637(b)(6) (1982) that the Small Business Administration is empowered "to determine within any industry the * * * business enterprises which are to be designated 'small-business concerns'," and that procurement agencies of the Government "shall accept as conclusive the Administration's determination as to which enterprises are to be designated 'small-business concerns'. * * * "

■ Southwest contends, however, that the Navy Department acted unfairly and arbitrarily on December 21, 1983, in proceeding to make an award on the RFP, without awaiting a determination by the Size Appeals Board of the Small Business Administration on Southwest's appeal from the December 6, 1983, adverse determina-

tion by the Regional Administrator of Region IX.

Evidence presented at the trial shows that, with respect to a program for the repair of naval vessels on an SRA basis, it is imperative that work commence on each ship as scheduled, because any delay in the commencement of such work seriously jeopardizes the timely and satisfactory completion of the work within a tightly scheduled availability period. The completion of an SRA repair job on schedule allows the ship to resume its operations in support of the Navy's commitments at sea.

It is concluded, therefore, that the Navy Department's action on December 21, 1983, in making an award on the RFP, instead of delaying the award to await the decision of the Size Appeals Board, Small Business Administration, on the possibility that the Board might overrule the December 6, 1983, decision of the Regional Administrator of Region IX, cannot properly be characterized as a failure to accord the plaintiff's proposal the fair and honest consideration required by law.

Moreover, there is nothing in the record to indicate that the Regional Administrator of Region IX, Small Business Administration, was influenced by prejudice against Southwest, or other improper motive, when the administrative regulations on smallness were interpreted differently in the decision of December 6, 1983, as compared with the interpretation announced in the decision of March 31, 1982.

It necessarily follows that the plaintiff is not entitled to declaratory or injunctive relief, or to recover bid preparation costs, in connection with the RFP.

■ Southwest has also submitted a proposal to the Navy, and seeks declaratory and injunctive relief in the complaint, in connection with another Request for Proposals, N00024–83–R–8547, which requested proposals for the overhaul, on an SRA basis, of the USS LYNDE MCCORMICK (DDG–8), the USS BERKELEY (DDG–15), the USS HENRY B. WILSON (DDG–7), and the USS ROBISON (DDG–12). These are

all guided missile destroyers. They are scheduled to undergo SRA's between the following dates: USS LYNDE MCCOR-MICK, May 21, 1984—July 20, 1984; USS BERKELEY, December 3, 1984—January 25, 1985; USS HENRY B. WILSON, January 7, 1985—March 1, 1985; and USS RO-BISON, May 27, 1985—July 19, 1985. There has been no determination by the Navy Department in connection with this particular Request for Proposals.

It is presumed that if, at the time when the Navy Department is ready to make an award on Request for Proposals N00024-83-R-8547, the Size Appeals Board of the Small Business Administration shall have rendered a decision favorable to Southwest on the latter's appeal, the Navy Department will consider Southwest's proposal for the guided missile destroyers on its merits.

## CONCLUSION OF LAW

On the foregoing opinion and the facts, as found by the court and stated in the opinion, the court concludes as a matter of law that the plaintiff is not entitled to declaratory or injunctive relief, or to recover bid preparation costs.

The complaint will therefore be dismissed, but the dismissal shall be without prejudice as to Request for Proposals N00024-83-R-8547.

IT IS SO ORDERED.