**WILLOW BEACH RESORT, INC.**

v.

**The UNITED STATES.**

**No. 361-83C**

United States Claims Court.

May 25, 1984.

Frank J. Cremen, Las Vegas, Nev., for plaintiff.

Helene M. Goldberg, Washington, D.C., with whom were Acting Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Sandra P. Spooner, Washington, D.C., for defendant.

## ORDER

### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

This case, which was originally instituted in the United States District Court for the District of Nevada and was then transferred to the United States Claims Court, is (in the language of the complaint) "an action for injunctive relief brought by the Plaintiff to prohibit the Defendant's violation of a contract made by the Defendant with the Plaintiff * * *."

The action is before the court at the present time on the defendant's motion to dismiss or, in the alternative, for summary judgment, and on the plaintiff's cross-motion for summary judgment.

As a number of documents have been submitted by the parties in connection with their respective motions, the case will be treated as having been brought before the court on cross-motions for summary judgment.

For the reasons stated hereafter, it is concluded that the defendant's motion for summary judgment should be granted, and that the plaintiff's cross-motion for summary judgment should be denied.

### The Facts

On October 10, 1962, the plaintiff, Willow Beach Resort, Inc. (sometimes referred to subsequently as "the Concessioner"), and the United States (acting through a contracting officer of the National Park Service, Department of the Interior) entered into Contract No. NPS–WASO–IX–62–4 ("the contract") for a term that initially extended through December 31, 1982. Subsequently, the term of the contract was extended for 3 additional years, or through December 31, 1985.

The contract, in section 2, authorized the plaintiff "to provide accommodations, facilities, and services for the public within the Willow Beach site, Lake Mead National Recreation Area," and there followed a listing of overnight accommodations, food and beverage services, merchandizing services, and:

> (4) Marine services, including, but not limited to boat docks, boats and motors for sale or hire, boat repair service, mooring service, fishing guide service, boating tours, and charter boat service on Lake Mohave.
>
> (5) Any and all services which are customary in connection with such operations.

The granting of the contract to the plaintiff was conditioned upon the requirement that the plaintiff undertake an improvement and building program that would cost not less than $250,000, the various types of required construction being specified in the contract.

Section 16 of the contract, headed "Preferential Right," stated in part that the plaintiff was granted "a preferential right, not an exclusive or monopolistic right, to provide public accommodations, facilities, and services in the Willow Beach site of the area as delineated on the attached sketch marked exhibit A of the character authorized hereunder." Exhibit A delineated an area that began on the Colorado River approximately 1½ miles below Hoover Dam, extended southward on the river for a distance of approximately 12 miles, and included land that extended eastward from the river for distances that varied from 1 mile to 5 miles.

The contract, in section 3(b)(1), provided in part that all rates and prices charged to the public by the plaintiff "shall be subject to regulation and approval by the Secretary [of the Interior], not inconsistent with an opportunity for the Concessioner to make a fair profit from the total of its operations hereunder."

On May 18, 1982, the National Park Service issued a prospectus requesting proposals "regarding a new visitor service to be operated by a concessioner, under the supervision of the superintendent, Lake Mead National Recreation Area, * * * pursuant to a concession permit." The proposed service was described as providing "sightseeing float trips in inflatable rafts, down the Colorado River, commencing at a point just below Hoover Dam on land administered by the Bureau of Reclamation, and terminating at Willow Beach, within Lake Mead National Recreation Area." The notice stated that the closing date for the submission of proposals would be June 18, 1982.

The plaintiff submitted a proposal in response to the request, as did other persons. The proposals were evaluated by the National Park Service, and on September 17, 1982, a company known as Black Canyon, Inc., was selected by the National Park Service as the successful offeror. The plaintiff's proposal was rejected as non-responsive.

On October 5, 1982, the plaintiff initiated suit in the United States District Court for the District of Nevada, alleging that the

proposed award of the rafting concession to Black Canyon, Inc., violated the plaintiff's preferential right, and seeking to enjoin any award of the concession to Black Canyon, Inc. In a decision rendered on April 5, 1983, the District Court determined that it lacked jurisdiction over the matter, and ordered that the case be transferred to this court.

A concession permit for the operation of the rafting service was awarded to Black Canyon, Inc., on April 22, 1983.

### Discussion

In the complaint, the plaintiff asks for a judgment "giving it preliminary and permanent injunctive relief preventing the defendants [sic] from entering into any concession agreement with any third party for the operation of a commercial sightseeing raft tour in the Black Canyon area of the Lake Mead Recreational Area without first giving the Plaintiff the opportunity to provide this service under its existing concession agreement with the defendants [sic] * * * ."

The plaintiff seeks relief under 28 U.S.C. § 1491(a)(3) (1982), which, in 1982 and in the following language, conferred upon this court equitable jurisdiction not possessed by our predecessor, the United States Court of Claims:

(3) To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.

In its motion, the defendant asserts that this court has no jurisdiction under section 1491(a)(3) to consider the complaint in the present case, because the complaint is not based on an alleged failure by the National Park Service to give full and fair consideration to the proposal which the plaintiff submitted for the rafting concession on the Colorado River. In this connection, the defendant's brief (at p. 7) makes the following statement:

* * * The United States Court of Appeals for the Federal Circuit has made clear that these expanded powers of the Claims Court [to grant injunctive relief under 28 U.S.C. § 1491(a)(3)] are limited in applicability to claims based upon the implied-in-fact contract to fully and fairly consider bids. *United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362 (Fed. Cir. [CA Fed.] 1983). [Underscoring in original.]

Actually, what the Federal Circuit made plain in its *Grimberg* decision was that the Claims Court did not have jurisdiction under 28 U.S.C. § 1491(a)(3) to restrain or enjoin the award of a contract in a situation where disappointed bidders waited until after the contract had actually been awarded to a competitor before they filed their complaint in the Claims Court. The Federal Circuit summarized its extensive discussion on the subject of jurisdiction by stating as follows:

We hold that exercise of the equitable power granted the Claims Court in 28 U.S.C. § 1491(a)(3) (amended 1982) is limited to cases in which complaints are filed in the Claims Court before the involved contracts have been awarded, and that the Claims Court therefore lacked jurisdiction to hear and determine the present demand for equitable relief filed *after the involved contracts were awarded.* [702 F.2d at 1374.]

In this case, the plaintiff filed its complaint in court before the National Park Service awarded the rafting concession to Black Canyon, Inc. It is true that the plaintiff initially filed its complaint in the wrong federal court. However, 28 U.S.C. § 1631 (1982) was designed to cover just such a situation. That section provides in part as follows:

Whenever a civil action is filed in a court as defined in section 610 of this title * * * and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer

such action * * * to any other such court in which the action * * * could have been brought at the time it was filed * * *, and the action * * * shall proceed as if it had been filed in * * * the court to which it is transferred on the date upon which it was actually filed in * * * the court from which it is transferred.

Accordingly, the case is to proceed here as though it had been filed in this court on October 5, 1982, which was more than 6 months before the concession permit for the operation of the rafting service was awarded to Black Canyon, Inc., on April 22, 1983. For that reason, the complaint here is not subject to the particular jurisdictional flaw which the Federal Circuit found to be fatal in the *Grimberg* case.

■ Of course, the jurisdiction of this court under section 1491(a)(3) extends only to the adjudication of a "contract claim" that is timely filed. Therefore, a complainant who seeks to invoke the court's jurisdiction under this section must necessarily show that he is asserting a "contract claim." It has happened that, generally, the persons seeking relief under section 1491(a)(3) have been bidders on government contracts who could show the existence of a contract claim only by establishing that there existed between each of them and the Government a contract, implied in fact, that their respective bids would be fully and fairly considered, under the doctrine announced by this court's predecessor, the United States Court of Claims, in such cases as *Heyer Products Co. v. United States*, 135 Ct.Cl. 63, 69, 140 F.Supp. 409, 412–13 (1956), and *Keco Industries v. United States*, 192 Ct.Cl. 773, 780, 428 F.2d 1233, 1237 (1970).

The plaintiff in this case contends that the court's jurisdiction under section 1491(a)(3) is not restricted to contract claims of the sort referred to in the preceding paragraph. The plaintiff stresses the word "any" in the language of the section declaring that "[t]o afford complete relief on *any* contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper * * *" (emphasis supplied).

The gravamen of the plaintiff's complaint in this case is that an award of the rafting concession to Black Canyon, Inc., would violate a contractual right vested in the plaintiff under the contract of October 10, 1962. Thus, according to the plaintiff, its claim for relief against the threatened violation of its contractual right, asserted in court before an award of the rafting concession was made, is covered by the broad term "any contract claim" in 28 U.S.C. § 1491(a)(3).

It is necessary, however, to consider the statutory phrase "any contract claim" in the context in which it appears, *i.e.*, "*any contract claim* brought before *the contract* is awarded*" (emphasis supplied). The syntax of the material just quoted seems to imply that, for a contract claim to be justiciable before this court under section 1491(a)(3), it must be one which arises in connection with and involves only "the contract" as to which an award by the Government is anticipated. That apparently has been the prevailing view of this court in previous cases, as the court has held that its jurisdiction under section 1491(a)(3) extends only to a claim asserted under a contract, implied in fact, obligating the Government to give full and fair consideration to a responsive bid submitted by a responsible bidder pursuant to an invitation from the Government for bids on a proposed contract. *See, e.g., Golden Eagle Refining Company, Inc. v. United States*, 4 Cl.Ct. 613, 619 (1984); *Southwest Marine, Inc. v. United States*, 4 Cl.Ct. 275, 279 (1984); and cases cited in those opinions.

■ The plaintiff concedes that it is not asserting a claim based upon its implied-in-fact contract with the Government that the proposal on the Colorado River rafting concession, which it submitted in response to the request for proposals from the National Park Service, would receive full and fair consideration. Therefore, under the view previously adopted by this court concerning

the scope of its jurisdiction under 28 U.S.C. § 1491(a)(3) (1982), the present complaint lies outside the court's jurisdiction.

■ In addition, assuming (for the purpose of discussion) jurisdiction to adjudicate the plaintiff's complaint, it appears that the plaintiff still would not be entitled to the injunctive relief which it seeks in this case.

The plaintiff alleges that the award of the rafting concession to Black Canyon, Inc., would violate the "Preferential Right" provision (section 16) of its existing contract with the National Park Service. In this connection, the plaintiff's brief supporting its cross-motion for summary judgment states (at p. 3) that "by virtue of this section of its contract the Plaintiff has the right of first refusal of any new or additional service to be established within its contractual area of the same character as that which it already provides, or has the right to provide." The brief further asserts (at p. 4) "that the government was required to offer to the Plaintiff the raft trip concession before soliciting bids to the public in general."

The plaintiff thus insists that the National Park Service, upon deciding that any new type of marine service on the portion of the Colorado River involved here would be beneficial to the public, must first request the plaintiff to perform the service, and can solicit proposals from other persons only if the plaintiff does not wish to perform the particular service. Under the plaintiff's version of section 16 of the existing contract, the plaintiff would have, in effect, a monopoly on the performance of marine services on the portion of the Colorado River mentioned in its existing contract with the National Park Service.

The plaintiff's view is contrary to the language of section 16, which expressly states that the plaintiff has "a preferential right, *not* an exclusive or monopolistic right" (emphasis supplied), to perform the various types of services mentioned in the contract. The plaintiff's "preferential" right to perform marine services on the Colorado River would be threatened with violation if—and only if—it were to appear that the National Park Service was proposing to issue to another person a concession for the performance of a type of marine service covered by the plaintiff's contract, in a situation where the plaintiff was willing to perform the new service under conditions and terms at least equally as advantageous to the Government as those offered by the other person.

The plaintiff's action in submitting a nonresponsive proposal for the operation of the rafting concession was not a proper attempt to exercise its preferential right under section 16 of its existing contract.

### Conclusion

On the basis of the materials submitted for the consideration of the court, the court concludes that there is no genuine issue as to any material fact necessary for the disposition of the case, and that the defendant is entitled to a judgment as a matter of law.

The defendant's motion for summary judgment is therefore granted, and the plaintiff's cross-motion for summary judgment is denied.

The complaint will be dismissed by the entry of judgment under Rule 58.

IT IS SO ORDERED.