**STANDARD MANUFACTURING COMPANY, INC.**

v.

**The UNITED STATES**

and

**AAI Corporation, Intervenor.**

No. 567–84C.

United States Claims Court.

Dec. 13, 1984.

Donald C. Holmes, Jr., Washington, D.C., for plaintiff; Edward R. Mackiewicz, Washington, D.C., of counsel.

Ronald A. Schechter, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

Bernard L. Shapiro, Philadelphia, Pa., for intervenor.

## MEMORANDUM OPINION AND ORDER

WOOD, Judge.

Plaintiff's complaint for injunctive and declaratory relief, and a subsequent application for a temporary restraining order (with related papers) were filed November 2 and 7, 1984, respectively. The complaint alleges a government threat immediately to award to AAI Corporation a contract for the procurement of certain MHU–173/E Munitions Lift Trailers ("MLTs") on a sole source basis, rather than on a competitive basis, in violation of "applicable federal procurement statutes and regulations," "Congressional procurement policy with re-

spect to competition in federal procurement" expressed in recently enacted (but not yet effective) legislation, and "specific federal defense budget authorizations for fiscal year 1985," and that the court should therefore grant plaintiff injunctive and declaratory relief precluding defendant from doing so.

By order, filed November 8, 1984, reciting defendant's agreement to defer any contract award for a substantial period of time, plaintiff's application for a temporary restraining order was denied as moot. The said order further stated that defendant intended to file a motion to dismiss the complaint on jurisdictional grounds, and established a time schedule for filing the motion, plaintiff's response thereto, and defendant's reply.[1]

Defendant then moved to dismiss the complaint, asserting that the court lacks subject matter jurisdiction, under 28 U.S.C. § 1491(a)(3) (1982), to grant plaintiff equitable relief with respect to the contemplated sole source procurement. Briefing on that motion was completed November 26, 1984. In the meantime, AAI Corporation filed a motion to intervene, asserting, in substance, that if the government's motion to dismiss is not granted, AAI should be permitted to participate in any subsequent proceedings herein. Oral argument on the motion to dismiss was heard December 4, 1984.[2] The motion to intervene was also considered at that time and, without objection by either plaintiff or defendant, was then allowed. Ruling on the motion to dismiss was, however, deferred.

 Upon consideration of the briefs and argument of the parties, it is concluded that defendant's motion to dismiss should be denied.[3] The reasons for this conclusion appear below.

---

1. The order also reflected an agreement with respect to voluntary discovery.

2. Counsel for AAI Corporation appeared, but offered no argument on the motion to dismiss.

3. For purposes of ruling upon defendant's motion, the allegations of fact in plaintiff's complaint are to be both accepted and construed in the light most favorable to plaintiff. *E.g., Balboa Insurance Co. v. United States*, 3 Cl.Ct. 543, 545 (1983).

## FACTS[4]

On May 22, 1984, the Aeronautical Systems Division, Air Force Systems Command, Department of the Air Force (hereinafter "the Air Force") published in the *Commerce Business Daily* ("CBD") a notice of intent to acquire, by a non-competitive acquisition from AAI Corporation, some 24 MHU–173/E Munitions Lift Trailers ("MLTs"), with an additional option for 22 MLTs in the succeeding fiscal year.[5] Prospective contractors were invited to state their interest and capability to perform, by submitting to the Air Force, within thirty (30) days following May 22, 1984, a statement of capability to perform containing certain specified information.[6] The notice of intent (also called a synopsis) concluded as follows: "See Note 22."

Department of Defense FAR Supplement § 5.207, "Preparation and Transmittal of Synopses," as in force throughout the period here relevant, required that a reference to Note 22 be included in any synopsis for a sole source contract (and defined its contents). Note 22 (as so defined) provided in part that "This procurement is for supplies or services for which the Government intends to solicit and negotiate with only one source," but nonetheless expressly invited interested persons to identify their interest and capability to "respond to the requirement or to submit proposals in response to this notice." Note 22 added that "This notice of intent is not a request for competitive proposals," that "A determination * * not to open the requirement to competition based upon responses to this notice is solely within the discretion of the Government," and that responses to the notice "will normally be considered solely for the purpose of determining whether to conduct a competitive procurement."

On June 11, 1984, and again on June 18, 1984, plaintiff submitted timely (and extensive) statements of interest and capability to perform to the Air Force. In essence, plaintiff asserted that AAI was not the only company with the experience and ability to meet the Air Force's required delivery schedule for MLTs, nor the only capable source for the MLTs in the configuration, and within the time frame, prescribed by the Air Force.

In a CBD notice published July 9, 1984, the Air Force announced its intent to establish an additional optional requirement to purchase 92 MLTs "above and beyond" the quantity contemplated by the May 22, 1984, synopsis. The July 9, 1984, notice indicated that the Air Force was currently conducting a source selection for the Simplified Munitions Lift Trailer ("SMLT"); that the additional units were intended to provide the Air Force with "an alternative to the candidate SMLT resulting from the * * * source selection"; that upon conclusion of the source selection the SMLT and the MLT would be compared, and that Headquarters, United States Air Force, would make a decision as to which unit would be selected; and that, should the decision be "in favor of the MLT, the Air Force contemplates award to AAI Corporation of the optional 92 units." Interested sources were requested to submit their responses to the Air Force within a specified period. The July 9, 1984, notice also incorporated "note 22," described above. By letter dated July 16, 1984, plaintiff again

---

**4.** The facts stated are derived from plaintiff's complaint and exhibits on file herein (including an affidavit by plaintiff's vice-president, Mr. C.C. Garner, with attachments.)

**5.** The MLT is a vehicle capable of loading air launched cruise missile pylons, short range attack missile rotary launchers, and the common strategic rotary launcher with or without weapons.

**6.** Publication of a proper notice of the proposed procurement action, at least 30 days prior to the commencement of negotiations for the award of

a procurement contract for the MLTs, was required by law. See 15 U.S.C.A. § 637(e)(1), (e)(2)(C) (West Supp.1984). See also Department of Defense FAR Supplement § 5.207(d)(70). The data requested included identification (and prior experience) of key management and program personnel, discussion of specific instances of previous experience as a munitions lift trailer contractor, and evidence of capability to perform successfully within the parameters described in the notice of intent.

advised the Air Force it "has the capability and is ready, willing and able to furnish" MLTs "in full compliance with the requirements of the * * *'" May 22 and July 9, 1984, synopses.

By letter dated October 15, 1984, the Air Force advised plaintiff that "Sole Source Justification (consistent with the referenced synopses) [sic] [had been] approved by Air Force Systems Command on 17 August 1984." The decision to approve the sole source justification was based on a recommendation reflecting (among other things) that plaintiff's responses had been evaluated but, in terms of a competitive procurement rather than a sole-source one, found wanting. Among other things, plaintiff's complaint alleges (and for present purposes it is assumed) that there is "no factual or legal justification for defendant's proposed sole source award under applicable statutes and regulations," and that such an award would be "illegal, arbitrary and capricious * * *," because of defendant's refusal to conduct negotiations with or solicit proposals from plaintiff, "a known and qualified source."

In any event, defendant has not sought from plaintiff, nor has plaintiff submitted to defendant, an actual bid proposal to furnish to defendant the 46 MLTs described in the May 22, 1984, synopsis.[7] Defendant not only has not issued to plaintiff any solicitation, invitation, or request for such a bid proposal, but has made it plain that it does not intend to solicit proposals from, or negotiate with, more than one source for the procurement of those MLTs.

## DISCUSSION

■ In moving to dismiss for lack of jurisdiction, defendant asserts that section 1491(a)(3)'s jurisdictional grant does not encompass pre-contract award disputes of the sort here alleged, but extends only to claims founded upon "the concept of an implied-in-fact contract between the government and all bidders responding to a government solicitation for bids that all bids submitted will be given fair and honest consideration."[8] It argues that because plaintiff is not a bidder on the procurement it seeks to enjoin, no basis exists for the exercise of this court's equitable jurisdiction under section 1491(a)(3). Defendant adds that plaintiff's submissions to the Air Force in this case were and are insufficient to justify any grant of equitable relief under section 1491(a)(3).

Plaintiff's response is basically that, on the facts and the provisions of certain federal procurement statutes and regulations[9] the court should hold that plaintiff has a "contract claim," within the meaning of section 1491(a)(3), arising from the May 22, 1984, synopsis and plaintiff's response thereto. More specifically, plaintiff asserts that 10 U.S.C. § 2304(g) (1982), concerning the solicitation of proposals in negotiated procurements, and statutory provisions (15 U.S.C.A. § 637(e)(1), (e)(2)(C), and (e)(3)(C) (West Supp.1984)) concerning publication of notice of intended procurement actions and solicitation of statements of interest and capability where an intent to procure on a sole source basis exists, "serve as the underpinning for an implied-in-fact contract in

---

7. Defendant has represented to the court that its procurement of MLTs pursuant to the May 22, 1984, synopsis will be funded with fiscal year 1983 funds, but that the additional optional quantity noted in the July 9, 1984, synopsis will not be funded at all without competition. Without prejudice to any rights plaintiff may wish to assert in consequence of the July 1984 synopsis (which differs materially in terms from the earlier one), this opinion focuses on the May 22, 1984 synopsis and plaintiff's response thereto.

8. The quotation is from *Harris Systems International, Inc. v. United States*, 5 Cl.Ct. 253, 260 (1984). Defendant also cites *ATL, Inc. v. United States*, 736 F.2d 677, 682 n. 17 (Fed.Cir.1984)

("The implied-in-fact contract theory extends only to claims brought by bidders * * *.")

9. To the extent, if any, plaintiff may contend that "arbitrary and capricious action by the contracting officials, to deny qualified firms the opportunity to compete fairly for the procurement award" (S.Rep. No. 275, 97th Cong., 1st Sess. 23 (1981), *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 33), would, in and of itself, permit the court to grant equitable relief under section 1491(a)(3), the contention is untenable. *ATL, Inc. v. United States*, 4 Cl.Ct. 672 (1984), *aff'd.*, 735 F.2d 1343 (Fed.Cir.1984).

**58**

this action," and that these provisions, considered together with the May 22, 1984, synopsis and plaintiff's response thereto, justify the conclusion that plaintiff has stated a "contract claim" within the meaning of section 1491(a) in general, and section 1491(a)(3) in particular. That position is held to be a valid one.

Section 1491(a)(3) encompasses *any* "contract claim," otherwise properly before this court, "brought before the contract is awarded." That statutory phrase "must necessarily be interpreted as referring to a claim *relating* to the prospective award of a contract * * *," and will, ordinarily, be based upon an implied contract that a contract bid will be fairly and honestly considered or, in shorthand, a "bid protest." *United States v. Grimberg*, 702 F.2d 1362, 1369 n. 11 (Fed.Cir.1983) (emphasis not supplied). In just such a "disappointed bidder" case, the Court of Appeals recently observed that the "implied-in-fact contract theory extends only to claims brought by bidders * * *." *ATL, Inc. v. United States*, 736 F.2d 677, 682 n. 17 (Fed.Cir. 1984). It is to be remembered, however, that section 1491(a)(3) speaks of a "contract claim," not of a frustrated bidder suit.

While none of the other cases in which section 1491(a)(3) has thus far been construed involved the precise factual situation and issue here present, many of those decisions too have suggested that "the cornerstone for this court's injunction powers under section 1491(a)(3) is the concept of an implied-in-fact contract between the government and all bidders responding to a government solicitation for bids that all bids submitted will be given fair and honest consideration." *Harris Systems International, Inc.*, 5 Cl.Ct. at 260, and cases there cited; see also *Eagle Constr. Corp. v. United States*, 4 Cl.Ct. 470, 475 (1984); *Southwest Marine, Inc. v. United States*, 4

Cl.Ct. 275, 279 (1984); *Downtown Copy Center v. United States*, 3 Cl.Ct. 80, 81–82 (1983); *Systems Architects, Inc. v. United States*, 2 Cl.Ct. 456, 461 (1983); *Indian Wells Valley Metal Trades Council v. United States*, 1 Cl.Ct. 43, 45–46, 553 F.Supp. 397 (1982).

A literal application of some of the language in *ATL*, in *Grimberg*, in other appellate decisions, and in the decisions of this court just cited, to the undisputed facts of this case would indeed tend to suggest that, as defendant urges, this court lacks jurisdiction, under section 1491(a)(3), to grant plaintiff any equitable relief. On careful analysis of the decisions of the Court of Appeals and its predecessor, the United States Court of Claims, and of the many decisions of this court, as to what constitutes a "contract claim" within the meaning and intent of section 1491(a)(1) (and the "second part" of section 1491(a)(3), *Grimberg*, 702 F.2d at 1365–67), however, it is concluded that this case is sharply distinguishable from each of them, and that a different result should obtain here.[10]

The essence of *Heyer Products Co., Inc. v. United States*, 135 Ct.Cl. 63, 140 F.Supp. 409 (1956), and its progeny is that, when defendant invites prospective contractors to respond to a request for offers to supply government procurement needs, the invitation is accompanied by the implied condition that each response will be "honestly considered," *Heyer Products*, 135 Ct.Cl. at 69, 140 F.Supp. 409. If the government is to be "given the benefit of the competition of the market," "each bidder is given the chance for a bargain," and the invitation necessarily gives rights to, and imposes obligations upon, both the issuer of the invitation and the bidder who responds to it. *Id.*, 135 Ct.Cl. at 70, 140 F.Supp. 409 (quoting from *United States v. Purcell Envelope Co.*, 249 U.S. 313, 39 S.Ct. 300, 63

10. In *Sioux Nation v. United States*, 220 Ct.Cl. 442, 601 F.2d 1157, 1170 (1979), *aff'd* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980), the court noted that the Supreme Court "frequently has cautioned against uncritically applying language used in a particular context in dealing with different situations. *Armour & Co. v.*

*Wantock*, 323 U.S. 126, 132–33, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944) ("[w]ords of our opinions are to be read in the light of the facts of the case under discussion * * *. General expressions transposed to other facts are often misleading.") * * *." That admonition appears particularly appropriate here.

L.Ed. 620 (1919)). In *Heyer Products,* the result of acceptance of the invitation was the formation of a contract implied-in-fact, and it was held that in alleging a breach of such a contract, the plaintiff had stated a "claim founded upon [an] * * * implied contract with the United States," within the meaning of section 1491 as it then existed. And, the statement of such a "contract claim," if plaintiff has done so, is unquestionably within the purview of section 1491(a)(1) as it exists today.

The kind of "contract claim" recognized and litigated in *Heyer Products,* and in a host of subsequent cases, will normally arise in the context of an advertised or a negotiated procurement in which competitive proposals are sought, and any litigation in this court respecting that procurement will normally be initiated by a disappointed bidder. The question here—not definitively resolved by any appellate (or other) decision cited by either party—is whether that is the *only* kind of "contract claim" directly *"related* to the award of a contract," *Grimberg,* 702 F.2d at 1369 n. 11, and contemplated by section 1491(a)(3). As noted above, it is concluded that the proper answer to that question is in the negative.

When defendant, in furtherance of a Congressional mandate designed to enhance competition in federal procurement, published the required notice of its intent to procure MLTs on a sole source basis, and invited interested persons "to identify their interest and capability to respond to such requirement, or to submit proposals in response to such notice" [11], it necessarily, if impliedly, "promised to give fair and impartial consideration * * *" to any response to that notice. *Heyer Products,* 135 Ct.Cl. at 69, 140 F.Supp. 409. Plaintiff has here alleged its acceptance of the offer, and a breach by defendant of the resulting implied contract, and has thus stated a claim

founded upon a contract with the United States, within the meaning of section 1491(a)(1) and section 1491(a)(3). See *Electro-Methods, Inc. v. United States,* 3 Cl.Ct. 500, 506–07 (1983), *aff'd in part and reversed in part,* 728 F.2d 1471 (Fed.Cir. 1984); *Yachts America, Inc. v. United States,* 3 Cl.Ct. 447 (1983); *American Hoist & Derrick Co. v. United States,* 3 Cl.Ct. 198 (1983).

The government's broad contention that it had no contractual obligation whatever to any persons who might respond to its invitation simply cannot be accepted. Its contention that Note 22 somehow defeats its promise fairly and honestly to consider such responses, or negates any implication of a contract implied-in-fact, misses the mark.

Note 22 declared a present (but not necessarily an unchangeable) intent to contract on a sole source basis, and made it clear that publication of the synopsis was not, *per se,* a request for competitive proposals. Note 22 also stated that defendant might very well decide not to open its requirement for 46 MLTs to competition based upon responses to the synopsis. Fairly read, however, Note 22 and the synopsis also implied, if it did not explicitly indicate, that any responses to the synopsis would, at the very least, be considered "for the purpose of determining whether to conduct a competitive procurement." [12] Indeed, that very purpose plainly underlies the publication and solicitation provisions referred to above.

Carefully read and construed as a whole, the May 22, 1984 synopsis enhances, rather than weakens, the conclusion that a contract implied-in-fact was intended, and created, here.[13] Defendant has furnished no real basis for distinguishing plaintiff's situation here from that of any "bidder" aggrieved by governmental breach of an im-

---

11. 15 U.S.C.A. § 637(e)(3)(C) (West Supp.1984).

12. To reiterate, the Air Force in fact *did* evaluate plaintiff's response prior to reaching its final conclusion that sole source negotiation with AAI Corporation was justified.

13. The government's contention that this holding would improperly result in an expansion of the concept of waiver of sovereign immunity is fallacious. There has long been a waiver of immunity from suit on claims based on contracts implied-in-fact.

plied promise fairly and honestly to consider its response to a government invitation, and none is perceived.

■ In light of the foregoing, defendant's motion to dismiss is denied. The burden of proof imposed upon a plaintiff seeking injunctive or declaratory relief in this court in a case such as this is a very heavy one. It may well be that plaintiff cannot successfully meet that burden. Plaintiff has, however, stated a contract claim within the jurisdiction of this court under section 1491(a)(3), and is entitled to the right to try to meet that heavy burden if it wishes to do so.[14]

Parenthetically, while this court "must decide [its] own jurisdiction * * *, and cannot have it conferred * * * by any other court," *Diamond v. United States*, 228 Ct.Cl. 493, 657 F.2d 1194, 1197 (1981), it is worthy of passing mention that there is grave doubt transfer of this action to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1631 (1982) would lead to a resolution of the merit *vel non* of plaintiff's claim of right to injunctive and declaratory relief. See *International Mailing Systems Div. v. United States Postal Service*, Civ. No. 84–2043 (D.D.C. September 21, 1984); and see *International Mailing Systems Div. v. United States*, No. 523–84 (Cl.Ct. November 30, 1984) (Margolis, J.)

Pursuant to RUSCC 65(a)(2), trial on the merits is hereby advanced and consolidated with the hearing of plaintiff's application for a preliminary injunction. Absent a further dispositive motion, or an order by the court authorizing or directing a different course[15], the parties are directed to pre-

mark and exchange proposed exhibits, to exchange witness lists (with a brief statement of the proposed testimony of each witness listed), to cooperate with each other in conducting any necessary discovery, and to endeavor to prepare a stipulation of agreed facts and a statement of facts in dispute, with these efforts to be completed prior to trial.

The case is hereby set for trial on the merits to commence at 10:00 a.m., January 7, 1985, in Courtroom 7, Room 508, at the National Courts Building, Washington, D.C. 20005. The period January 7–11, 1985 or so much thereof as may be necessary, is reserved for the taking of testimony. A brief pretrial conference, to incorporate into the record the results of the pretrial activities directed hereinabove, together with any other appropriate matters, will be held immediately prior to the formal opening of trial on January 7, 1985.

IT IS SO ORDERED.

---

**14.** *Cf. Aero Corporation v. Department of the Navy*, 540 F.Supp. 180 (D.D.C.1982); *Keco Industries, Inc. v. United States*, 492 F.2d 1200 (Ct.Cl.1974). The relief claimed in plaintiff's complaint is, in essence, only that defendant be required to award a contract for the procurement of the MLTs here relevant on a competitive basis and not upon a sole source basis.

**15.** If interlocutory appeal from the denial of defendant's motion to dismiss is deemed feasible, an appropriate motion so indicating (and specifying any relief sought from this court) may be filed with the Clerk. In this connection,

the court hereby states that this memorandum opinion and order involves a highly significant and controlling issue of law with respect to which there is a substantial ground for difference of opinion, and that an immediate appeal from the opinion and order may materially advance the ultimate termination of the litigation. See 28 U.S.C. § 1292(d)(2) (1982). Moreover, a definitive ruling on the issue would greatly aid this court, potential litigants and the United States generally in assessing rights and obligations in this exceedingly difficult jurisdictional thicket.