**HEYER PRODUCTS COMPANY, Inc.,**
v.
**The UNITED STATES.**
**No. 96–55.**

United States Court of Claims.
May 1, 1956.

**410**

Carl L. Shipley, Washington, D. C., for plaintiff.

Herman Wolkinson, Washington, D. C., with whom was Acting Asst. Atty. Gen. George S. Leonard, for defendant. Francis J. Robinson, Arlington, Va., was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This case is before the court on defendant's motion to dismiss plaintiff's petition on the ground that it does not state a cause of action.

The material allegations of the petition are as follows: On March 17, 1952, the Ordnance Tank Automotive Center, Ordnance Corps, United States Army (hereinafter referred to as OTAC) advertised for bids on 5,500 low-voltage circuit testers. On April 15, 1952, plaintiff submitted a bid, together with a sample unit and a letter of explanation, a photograph of the completed unit, a schematic diagram showing the circuit connections, and a specification describing the unit in detail. It alleges that its bid of $205,975 was the low bid, and that it was and is a responsible bidder; but that the Government, nevertheless, awarded the contract to a bidder whose bid was higher than the bids of six other bidders, including the plaintiff, and $190,043 higher than plaintiff's low bid of $205,975.

Plaintiff alleges that the failure of defendant to award it the contract "was the result of a deliberate artifice to retaliate against plaintiff for testifying against OTAC at a Senate hearing in 1952; that defendant deliberately and in violation of law wished to favor the successful bidder, and that defendant's action throughout the entire transaction was arbitrary, capricious, and taken in bad faith."

As a result, plaintiff says it not only lost the $7,000 which it spent in preparing its bid, but also lost its anticipated profit on the contract of $38,000, for which amounts it sues.

Defendant moves to dismiss plaintiff's petition on the ground that it does not state a cause of action.

Plaintiff's allegation of arbitrary and capricious action and of bad faith in awarding the contract was not a reckless averment. Facts are alleged that tend to support the allegation. The very fact that the bid was awarded to a bidder whose bid was higher than the bids of six other bidders, and that it was awarded at a price almost twice the low bid, put in by a responsible bidder, makes one strongly suspect discrimination and favoritism and a failure to accept that bid which was most advantageous to the Government, as OTAC was required to do under the Armed Services Procurement Act of 1947, 62 Stat. 21, 41 U.S.C.A. § 151 et seq. This suspicion grows stronger in the light of the further facts alleged.

Three months elapsed between the opening of the bids and the award of the contract. In the meantime, plaintiff's president had appeared before the Select Committee on Small Business of the United States Senate in connection with the rejection of a prior bid of the Heyer Products Company for 3,000 low-voltage circuit testers, and in that hearing he had testified that that contract had been awarded to Weidenhoff Company, who was higher than six other bidders and whose bid was $116,730 higher than plaintiff's low bid of $134,100. It is further alleged that after hearing this testimony, the Committee, to quote from its report (Senate Report 1092, 83d Cong., 2d sess.), which is incorporated in plaintiff's petition,—

" * * * sought to ascertain what procurement policies and procedures in use at OTAC could possibly result in passing up the Heyer low bid to award this contract to the seventh high bidder at almost double the low bid price. This was of

particular interest to your committee as the evidence revealed that Heyer had built thousands of low-voltage testers for commercial use, and some 52,000 for military use during World War II, and that Heyer had been a well-known manufacturer of automotive test equipment for 25 years, having built equipment for many of the leading companies in the automotive field, including Ford, Goodyear, Goodrich, Firestone, Willard, Exide, Atlas, Autolite."

After hearing testimony of representatives of the Ordnance Corps, the Select Committee on Small Business made a report (Senate Report 2070, 82d Cong., 2d sess., p. 13), released April 28, 1952, quoted in the petition, in which it said:

"The representatives of Army Ordnance who appeared before your committee to explain * * * why the Heyer bids had been rejected did not give convincing explanations."

After his testimony and the report of the Select Committee, the petitioner alleges that, in retaliation for his appearance before the Select Committee, the award of the present contract in suit was again made to the same Weidenhoff Company, whose bid again was higher than the bid of six other bidders, and $190,043 higher than plaintiff's low bid of $205,975. Plaintiff alleges that this was done in brazen defiance of the provisions of the Armed Services Procurement Act of 1947, requiring the acceptance of that bid which was most advantageous to the Government.

After the rejection of its bid on July 3, 1952, and the award of the contract to Weidenhoff Company, plaintiff alleges he again appeared before the Select Committee on Small Business, which conducted further hearings and made Report No. 1092, 83d Cong., 2d sess., which plaintiffs sets out in its petition. In its report the Committee set out the prior history of plaintiff's dealings with the Ordnance Department, as detailed above, and stated:

"This incredible coincidence [that both on November 3, 1950 and on April 16, 1952, the contract should have been awarded to the Weidenhoff Company, whose bid in both instances was higher than the bids of six other bidders and nearly double that of the lowest bidder] would seem to indicate that the officials in charge of OTAC have no wish or will to abide by the spirit and purpose of the Armed Services Procurement Act of 1947."

The committee goes on to report further that it called before it the Commanding Officer at OTAC and that this officer testified that the Heyer bid was rejected in favor of Weidenhoff because of "technical evaluation"; but that the Heyer Company "protested to your committee on the ground the technical reasons adduced by OTAC to justify its decision were insubstantial and were merely put forward as an ostensible excuse to deprive Heyer of a contract, to which he was rightly entitled by reason of his low bid, and that this was retaliation against him, for appearing at the first hearing on low-voltage circuit tester procurement."

To resolve this dispute the report states that Mr. Heyer and representatives of the Army "agreed to submit the disputed technical questions to the Detroit Testing Laboratory, an independent engineering laboratory, specializing for 50 years in testing devices to determine whether they comply with specifications;" that such a submission was made; and that the Detroit Testing Laboratory reported, among other things, that the specifications of the Ordnance Corps were not sufficiently clear, that additional requirements were superimposed in considering the bids, that the Army applied improper tests to the models submitted by bidders, and that, whether or not any of the bids met the specifications as drawn, Heyer's bid met them, if Weidenhoff's did.

From all of this the Committee concluded: "Your committee can only conclude that for some reason unknown to it, OTAC wished to favor Weidenhoff, or to eliminate Heyer. The evidence adduced above permits no other inference, unless it be attributed to gross incompetence." And finally the Committee said: "All in all, this is a shameful story."

It will thus be seen that plaintiff's petition contains sufficient allegations to make out a case of discrimination against it, and of favoritism toward Weidenhoff Company, at a loss to the Government of several hundred thousand dollars. If the allegations are true, it would seem impossible to conclude that that bid had been accepted which was most advantageous to the Government.

Notwithstanding all this, defendant says that paintiff has no legal capacity to sue, and that its petition should be dismissed.

■ It has been settled beyond controversy that most statutes governing the awarding of bids by governmental agencies are enacted for the benefit of the public who are served by these agencies, and not for the benefit of the bidders, and, therefore, that bidders have no right to sue on the ground that the provisions of such an Act have been violated, in that the contract had not been let to the lowest bidder. United States v. New York & Puerto Rico Steamship Co., 239 U.S. 88, 36 S.Ct. 41, 60 L.Ed. 161; American Smelting & Refining Co. v. United States, 259 U.S. 75, 42 S.Ct. 420, 66 L.Ed. 833; Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108; Colorado Paving Co. v. Murphy, 8 Cir., 78 F. 28, 37 L.R.A. 630, and other cases cited in Perkins v. Lukens Steel Co., supra.

It is true that one of the purposes of the Act of February 19, 1948, the "Armed Services Procurement Act of 1947," was to induce the letting of a fair proportion of Government contracts to small business concerns; indeed, this was declared to be the "policy of Congress" in the beginning of the Act; but the main purpose of the Act was to give directions for the conduct of Government agents in making contracts, and this was for the purpose of protecting the public, and not the bidders. Clearly, section 3 (b), which plaintiff says was violated, was enacted for the benefit of the public, and not for the benefit of bidders. This section reads:

"All bids shall be publicly opened at the time and place stated in the advertisement. Award shall be made with reasonable promptness by written notice to that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the Government, price and other factors considered: *Provided*, That all bids may be rejected when the agency head determines that it is in the public interest so to do." 41 U.S.C.A. § 152 (b).

■ So, if an award is made to a bidder whose bid was not "most advantageous to the Government, price and other factors considered", and the Act was, therefore, violated, it is only the public who has a cause for complaint, and not an unsuccessful bidder.

■ The advertisement for bids was, of course, a request for offers to supply the things the Ordnance Department wanted. It could accept or reject an offer as it pleased, and no contract resulted until an offer was accepted. Hence, an unsuccessful bidder cannot recover the profit he would have made out of the contract, because he had no contract.

But this is not to say that he may not recover the expense to which he was put in preparing his bid.

It was an implied condition of the request for offers that each of them would be honestly considered, and that that offer which in the honest opinion of the contracting officer was most advantageous to the Government would be accepted. No person would have bid at all if he had known that "the cards were stacked against him." No bidder would have put out $7,000 in preparing its bid,

as plaintiff says it did, if it had known the Ordnance Department had already determined to give the contract to the Weidenhoff Company. It would not have put in a bid unless it thought it was to be honestly considered. It had a right to think it would be. The Ordnance Department impliedly promised plaintiff it would be. This is what induced it to spend its money to prepare its bid.

The OTAC knew it would involve considerable expense to prepare models, photographs, diagrams and specifications and other things necessary to comply with the invitation, and so, when it invited plaintiff to incur this expense, it must necessarily be implied that it promised to give fair and impartial consideration to its bid, having in mind only the interest of the Government and not the interest of some favorite bidder.

That promise was broken, shamefully broken, if plaintiff's petition states the facts. If the facts there stated are true, the conclusion seems inescapable that the Ordnance Department knew from the beginning they were going to give Weidenhoff the contract. The advertisement for bids was a sham, done only to appear to comply with the law, to clothe their apparently dishonest purpose with the habiliments of legality. If these allegations are true, they practiced a fraud on plaintiff and on all other innocent bidders. They induced them to spend their money to prepare their bids on the false representation that their bids would be honestly considered.

This implied contract has been broken, and plaintiff may maintain an action for damages for its breach.

The facts in United States v. Purcell Envelope Co., 249 U.S. 313, 39 S.Ct. 300, 301, 63 L.Ed. 620, differ from the facts in this case in that in that case plaintiff's bid was accepted. But after acceptance the head of the department refused to execute the written contract. Plaintiff sued and the Government defended on the ground that discretion rested in the department head to choose with whom it would contract, and that it had chosen not to contract with plaintiff,

and, hence, plaintiff had no legal capacity to sue.

The court held that a contract resulted from the offer and acceptance and that the subsequent signing of a written contract was not required.

The facts in the two cases are, therefore, different, but in the course of its opinion the Supreme Court used this language, which is applicable to the present case:

"There must be a point of time at which discretion is exhausted. The procedure for the advertising for bids for supplies * * * to the government would else be a mockery—a procedure, we may say, that is not permissive but required. * * By it the government is given the benefit of the competition of the market and each bidder is given the chance of a bargain. It is a provision, therefore, in the interest of both government and bidder, necessarily giving rights to both and placing obligations on both. And it is not out of place to say that the government should be animated by a justice as anxious to consider the rights of the bidder as to insist upon its own."

The cases we cited in the beginning of this opinion hold that acts requiring advertising and letting to the lowest responsible bidder confer no right on the bidder to secure the contract, whether or not he is the lowest responsible bidder, and, hence, he may not recover his loss of anticipated profits. We do not understand the Supreme Court in the Purcell Envelope case, supra, to have intended to hold to the contrary, but it did definitely recognize that the bidder had certain rights, and that the Government was under an obligation to respect those rights.

Among these rights is the right to have his bid honestly considered. The Government is under the obligation to honestly consider it and not to wantonly disregard it. If this obligation is breached and plaintiff is put to needless

expense in preparing its bid, it is entitled to recover such expenses.

■■■ It goes without saying that not every unsuccessful bidder is entitled to recover the cost of putting in his bid. Recovery can be had in only those cases where it can be shown by clear and convincing proof that there has been a fraudulent inducement for bids, with the intention, before the bids were invited or later conceived, to disregard them all except the ones from bidders to one of whom it was intended to let the contract, whether he was the lowest responsible bidder or not. In other words, it must be shown that bids were not invited in good faith, but as a pretense to conceal the purpose to let the contract to some favored bidder, or to one of a group of preferred bidders, and with the intent to wilfully, capriciously, and arbitrarily disregard the obligation to let the contract to him whose bid was most advantageous to the Government.

Defendant's motion to dismiss plaintiff's petition is denied.

It is so ordered.

JONES, Chief Judge, and LITTLETON, Judge, concur.

MADDEN, Judge (dissenting in part).

I think that under the terms of the Armed Services Procurement Act of 1947, 41 U.S.C.A. § 151(b), the plaintiff had an interest which that law was designed to protect. The principal purpose of laws relating to bidding, and of the statute here under consideration is, of course, the protection of the public treasury. But the background of this statute seems to me to show that another purpose of the statute was to give small business men the right to get Government contracts if their bids were more advantageous to the Government than competing bids. I would treat the plaintiff's claim as one founded upon an Act of Congress. If, upon trial, the plaintiff proves that the Act has been violated by the agents of the Government, to his damage, I would give him a judgment for the damage.

I am not unmindful that in administering the business affairs of the Government, a wide discretion, within the stated legal limits, should be allowed to the responsible agents. But no one would claim, and the Government does not claim, that conduct such as that alleged in the plaintiff's petition is within the allowable discretion of any Government officer.

The opportunity to expose such conduct as that alleged in the petition, in a judicial proceeding, and the awarding to the victims of such conduct of compensation for their losses resulting therefrom, would be good for public morals. I would let the plaintiff prove, if it can, what it has alleged, and if it does prove it, let the normal legal consequences follow.

LARAMORE, Judge (dissenting).

While I cannot condone the wrong done plaintiff, as alleged, I must respectfully dissent.

If the officer acting on behalf of the Government was guilty of the acts alleged in the petition, it would amount to fraud. A suit founded on fraud would sound in tort, and it is clear that this court has no original jurisdiction of tort actions. Martilla v. United States, 118 Ct.Cl. 177.

The plaintiff, in order to recover, must show that he has a contract that he shall receive fair consideration of his bid, or that a statute by its own terms authorizes his recovery in the event his bid does not receive fair consideration. Neither the facts nor the statutes involved justify a conclusion that the Government made a contract with plaintiff to give him fair consideration. On the other hand, there is nothing in the statute which, by its own terms, would authorize the plaintiff to receive a judgment if the contracting officials had not given his bid fair consideration. Without one or the other basis, I cannot see how the court can render judgment for the plaintiff.

I would dismiss the petition.