**TRANS INTERNATIONAL AIRLINES, INC. (Formerly Los Angeles Air Service, Inc.)**

v.

**The UNITED STATES.**

No. 271-60.

United States Court of Claims.

Oct. 15, 1965.

Warren E. Miller, Washington, D. C., attorney of record, for plaintiff. G. Kibby Munson, Washington, D. C., of counsel.

R. W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

COLLINS, Judge.

This action and Coastal Cargo Co. v. United States, Ct.Cl. 351 F.2d 1004, which was also decided today, are based, to a considerable extent, upon the same set of facts. In September 1958, the Department of the Air Force awarded to Coastal Cargo Co. (hereinafter "Coastal") a contract for certain airlift services. Subsequently, in December 1958, the General Accounting Office ruled that the award to Coastal had violated the applicable procurement regulations. As a result, on December 18, 1958, the Air Force canceled its contract with Coastal and awarded to Los Angeles Air Service, Inc. (hereinafter "Los Angeles"), a contract for the remaining air transportation service. After the commencement of the present suit, the name of Los Angeles was changed to "Trans International Airlines, Inc."

Plaintiff is asserting three different claims, the first of which is premised upon the illegality of the award to Coastal. The latter company performed the contract for a period of approximately 2½ months. Plaintiff seeks to recover (1) the "standby" and maintenance costs which it incurred prior to its receipt of the contract and (2) the profits antici-

pated by plaintiff for the 2½ months when Coastal was performing. In effect, plaintiff asks us to adopt the ruling of the General Accounting Office that the award to Coastal was invalid.

In answer to plaintiff's contentions, it is sufficient to refer to the conclusion which we reached in the companion case, Coastal Cargo Co. v. United States, supra. There, we determined that the award to Coastal had been in compliance with the pertinent regulations, and we held that Coastal was entitled to recover for the termination of its contract. It follows, therefore, that any claim of the present plaintiff which is founded upon the invalidity of the award to Coastal must fail.

Our decisions in Heyer Products Co. v. United States, 140 F.Supp. 409, 135 Ct.Cl. 63 (1956); 177 F.Supp. 251, 147 Ct.Cl. 256 (1959), are of no avail to plaintiff. At 140 F.Supp. at 412, 135 Ct.Cl. 63, 68, we stated the following general rule:

It has been settled beyond controversy that most statutes governing the awarding of bids by governmental agencies are enacted for the benefit of the public who are served by these agencies, and not for the benefit of the bidders, and, therefore, that bidders have no right to sue on the ground that the provisions of such an Act have been violated, in that the contract had not been let to the lowest bidder. * * [Citations omitted.]

Thus, we concluded that the plaintiff, whose bid had been rejected, could not recover anticipated profits. Nonetheless, the Government's motion to dismiss was denied, since the plaintiff had alleged (1) that the invitation for bids had not been issued in good faith and (2) that its bid had not received fair consideration. 140 F.Supp. 409, 135 Ct. Cl. 63, 71. Our opinion stated that, if Heyer could prove its allegations, then Heyer would be entitled to recover the expense of preparing its bid.[1]

---

1. Subsequently, a trial on the merits was held. This led ultimately to a decision ad-

verse to Heyer. We concluded that, since the plaintiff's sample had failed to meet

The instant case is clearly distinguishable from the situation alleged in Heyer Products Co. v. United States, supra. In the present case, there was neither bad faith nor arbitrariness on the part of the contracting officer. We have found, to the contrary, that award of the contract to Coastal was a proper action. Therefore, as to the period prior to December 18, 1958, plaintiff was merely an unsuccessful bidder, and there is no basis for any recovery by plaintiff with regard to that period.

The fact that plaintiff's first claim must be denied does not in itself mean that recovery on the remaining claims is precluded. Count two of the petition states that for the period December 19 through December 31, 1958, the Government did not meet its alleged guarantee to pay for 86 passengers per flight. During December, plaintiff made four one-way flights and was paid on the basis of 72 passengers per trip. The actual number of persons carried was, in each instance, less than 72.

According to plaintiff, the contract obligated the Government to pay, with respect to each flight, the price for transporting plaintiff's mean available cabin load (ACL) of 86 passengers,[2] regardless of the number actually carried. Plaintiff asserts that this guarantee was confirmed in the January 6, 1959, telegram sent by the contracting officer.

Finding 42. Finally, plaintiff urges that, if there is any ambiguity as to the guarantee of payment, the doubt must be resolved against the Government. Plaintiff cites, for example, Peter Kiewit Sons' Co. v. United States, 109 Ct.Cl. 390, 418 (1947), in which this court stated:

> * * * Where one of the parties to a contract draws the document and uses therein language which is susceptible of more than one meaning, and the intention of the parties does not otherwise appear, that meaning will be given the document which is more favorable to the party who did not draw it. * * *

With regard to the instant case, we have no difficulty in ascertaining the intent of the parties.

It is axiomatic that, in order to determine the meaning of a contract, one must look to the entire instrument. E. g., Jansen v. United States, 344 F.2d 363, 170 Ct.Cl. 346 (1965). Here, any possible uncertainty created by the guarantee provisions of the invitation for bids or by the post-December telegram is quickly dispelled when the contract as a whole is considered. First, it is undisputed that the parties agreed that, during December, plaintiff would *transport* 144 (round trip) passengers. Second, the award stated the precise sum which would be payable to plaintiff and this included, for December, an amount computed on the basis of 72 passengers per flight.[3]

---

the specifications, rejection of the plaintiff's bid was not improper, 177 F.Supp. 251, 147 Ct.Cl. 256, 266.

2. Finding 51 pertains to the available cabin loads (ACL) which plaintiff indicated in its bid. Plaintiff's mean available cabin load, 19,350 pounds, was the equivalent of 86 passengers per flight. (The weight allocable to an individual passenger was 225 pounds.) The invitation for bids designated the mean ACL as the "Government's guarantee."

3. As indicated in finding 50 the award described the subject matter of the contract as follows:

"Round Trip air transportation of 144 passengers for month of December 1958 and 500 passengers per month for months

of January 1959 through September 1959 from Charleston AFB, South Carolina to Nouasseur, Morocco at $215.08 per tax [passenger]."

The total price, which was stated to be $998,831.52, can be broken down as follows:

December 1958 (144 round
trip flights at $215.08) .... $ 30,971.52
January through September 1959 (9 months, 500
round trip flights per
month) ................... 967,860.00

Total ................ $998,831.52

Thus, it is apparent that the contract price supports defendant's contention that plaintiff was to be guaranteed 72, *not* 86, passengers per trip for the flights made in December 1958.

This *specific* agreement as to the amount payable to plaintiff is controlling. Cf. Hol-Gar Mfg. Corp. v. United States, (January 22, 1965), 351 F.2d 972, 169 Ct.Cl. 384; Callahan Constr. Co. v. United States, 91 Ct.Cl. 538, 634 (1940). Plaintiff received the full contract price, and it is entitled to no more.

■ In count three of the petition, plaintiff alleges that, between December 23, 1958, and August 1959, it was denied the right to purchase aviation fuel and oil from the Air Force. Plaintiff asks that it be awarded the difference between (1) the higher rates paid to commercial suppliers and (2) the prices charged by the Air Force.

Effective December 23, 1958, the pertinent Air Force regulation was amended so as to permit companies, such as plaintiff, which were under contract to the Government to purchase Air Force fuel and oil even though commercial products were available. The facts regarding plaintiff's efforts to take advantage of the new policy are set forth in findings 56–62.

Plaintiff asserts that, after the amendment of the regulation but *prior* to August 1959, it requested permission to make purchases from the Air Force at Charleston Air Force Base. However, the findings of our trial commissioner do not support plaintiff's contention, and we have adopted these findings. The regulation in question, AFR 67–53, was not self-executing. If plaintiff wished to obtain the benefits of the regulation, it was incumbent upon plaintiff to make a request of the proper air base authority. Since plaintiff failed to do so until August 1959, we hold that its claim must be denied.

In conclusion, plaintiff is not, with regard to any of the three counts, entitled to recover. Therefore, the petition is dismissed.