**TRW, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–198C.

United States Court of Federal Claims.

April 23, 1993.[1]

---

**1.** This opinion initially was filed under seal. After a discussion with the parties, the court has determined to release the opinion for publication, effective April 29, 1993.

Kenneth B. Weckstein, Washington, DC, for plaintiff. Catherine A. English and James C. Diggs, of counsel.

Brian S. Smith, with whom were Asst. Atty. Gen. Stuart E. Schiffer and David M. Cohen, Director, Washington, DC, for defendant. Jim Corbitt and Terry Dermott, I.R.S., of counsel.

## OPINION

ANDEWELT, Judge.

### I.

In this government contract action, plaintiff, TRW, Inc., seeks to recover approximately $2.9 million in bid and proposal (B & P) costs that it incurred in preparing a bid proposal in response to the United States Internal Revenue Service's (IRS) Request for Proposal No. IRS–89–038 (RFP), issued on September 29, 1989. The RFP covered an automated method of processing checks and forms designated as the Check Handling Enhancements and Expert Systems (CHEXS). Plaintiff submitted a proposal in response to the RFP but, after a series of negotiations with plaintiff, the IRS ultimately determined not to award a contract under the RFP requirements. Plaintiff contends that it is entitled to recover all of the B & P costs it incurred in preparing its CHEXS proposal because the IRS breached its contractual obligation to consider plain-

tiff's bid proposal fairly and honestly. This action is presently before the court on defendant's motion for partial summary judgment. For the reasons set forth below, defendant's motion is denied.[2]

## II.

The genesis of the type of action involved herein, where an unsuccessful bidder on a federal contract seeks to recover its B & P costs in the United States Court of Federal Claims, is the Court of Claims decision in *Heyer Products Co. v. United States*, 135 Ct.Cl. 63, 69, 140 F.Supp. 409 (1956); *see also Keco Industries, Inc. v. United States*, 192 Ct.Cl. 773, 428 F.2d 1233 (1970). In *Heyer*, the court held that an implied-in-fact contract is created when a contractor submits a bid in response to a government bid solicitation, and that pursuant to this implied contract, the government is obliged to consider that bid fairly and honestly. The measure of damages potentially available for a breach of such an implied-in-fact contract is "the expense to which [the bidder] was put in preparing [its] bid." 135 Ct.Cl. at 69.

In its motion for partial summary judgment, defendant contends that even assuming the IRS breached its contractual obligation to consider plaintiff's proposal fairly and honestly, plaintiff nevertheless is precluded from recovering approximately $2.1 million of the approximately $2.9 million in B & P costs sought in its complaint. Defendant bases its motion on advance agreements plaintiff had entered with the United States Department of Defense (DoD). These agreements obliged the government to pay certain B & P costs incurred during the years 1990–92 by plaintiff's Space and Defense Sector (TRW Space). Defendant contends that pursuant to these advance agreements, defendant already has paid plaintiff $2.1 million of the $2.9 million in

CHEXS B & P costs plaintiff seeks in this action. As an alternative argument, defendant contends that even if the $2.1 million in CHEXS B & P costs had not been paid, in view of the advance agreements, plaintiff would receive an improper "windfall" if the government made any additional payments toward reimbursing this $2.1 million in costs. To comprehend defendant's argument, it is necessary to understand the intricacies of these advance agreements.

## III.

During the pertinent time period, the Secretary of Defense was obliged by statute to enter annual agreements with qualifying contractors that describe the manner and extent to which DoD would pay a contractor's independent research and development (IR & D) and B & P costs for future years.[3] The purpose of such agreements was to encourage contractors to engage in research and development activities.

Herein, plaintiff entered two advance agreements with DoD, one covering the year 1990 and the other covering the years 1991 and 1992. These agreements include almost all of TRW Space's operations and oblige DoD to pay incurred IR & D and B & P costs (hereinafter B & P costs) up to a specified ceiling amount. The parties, in effect, arranged for the government to pay the sums owed plaintiff under these advance agreements through payments based on plaintiff's General and Administrative (G & A) costs billed through existing government contracts. For each year, the parties adjusted the G & A expense rate used in these existing contracts so that by the end of the year, the total periodic payments to plaintiff for B & P costs would equal the ceiling amount contained in the applicable advance agreement. Since actual G & A

---

**2.** The facts necessary to resolve defendant's motion for partial summary judgment are not in dispute.

**3.** In a succession of statutes, the Secretary of Defense has been required to negotiate advance agreements covering the payment of IR & D and B & P costs where a qualified contractor incurs a specified amount of IR & D and B & P costs.

*See* 10 U.S.C. § 2358 (*see* Amendments, Pub.L. No. 91–441, Title II, § 203(a)-(d), (f), 84 Stat. 906–908 (1970), as amended by Pub.L. No. 96–342, Title II, § 208, 94 Stat. 1081 (1980)); 10 U.S.C. § 2372 and, as later amended by, Pub.L. No. 102–190, Div. A, Title VIII, § 802(a)(1), (e), 105 Stat. 1412, 1414 (1991). *See also* FAR 31.-205–18(c), 48 C.F.R. § 31.205–18 (1990).

**158**

expenditures and B & P costs for a given year could only be estimated, the G & A rate was established on a provisional basis. The rate was subject to subsequent modification to assure that the total payments resulting from the G & A adjustment did not exceed the lower of (1) plaintiff's actual B & P costs and (2) the ceiling amount established in the applicable advance agreement.

In each of the years 1990–92, plaintiff received payments equal to the ceiling amounts set forth in the advance agreements but its actual B & P costs apparently far exceeded those ceilings. For each of these years, the following chart shows the established ceiling and amount paid pursuant to the applicable advance agreement, the B & P costs plaintiff allegedly incurred subject to the agreement, the amount of such costs incurred in excess of the ceiling (total uncompensated B & P costs), and the total amount of alleged B & P costs incurred by plaintiff on the CHEXS solicitation for that year.

| | 1990 | 1991 | 1992 |
|---|---|---|---|
| Amount Paid Up To The Ceiling | $136,000,000 | $177,500,000 | $180,250,000 |
| Total B & P Costs Incurred | 170,390,000 | 195,514,000 | not yet calculated |
| Uncompensated B & P Costs Incurred Above The Ceiling | 34,390,000 | 18,014,000 | not yet calculated |
| CHEXS B & P Costs Incurred | 845,343 | 1,229,845 | 9,910 |

As the chart demonstrates, for 1990 and 1991, the amounts of uncompensated B & P costs far exceeded the total amounts of plaintiff's CHEXS B & P costs. For 1992, the total B & P costs incurred and the uncompensated B & P costs have not yet been calculated, but plaintiff maintains, and defendant does not now dispute, that the total uncompensated B & P costs for that year similarly exceeded plaintiff's CHEXS B & P costs.

### IV.

Defendant has not contended that the B & P costs plaintiff incurred for the CHEXS solicitation had any material effect on the ceilings negotiated by the parties in the advance agreements. Therefore, for purposes of resolving defendant's partial summary judgment motion, the court will assume that the ceilings contained in the advance agreements would have been the same had plaintiff never bid on CHEXS. In addition, as noted above, plaintiff's actual B & P costs for each of the applicable years exceeded the ceilings by an amount greater than plaintiff's B & P costs for CHEXS. Therefore, the court will similarly assume that had plaintiff not responded to the CHEXS RFP, and thereby not incurred any of the alleged CHEXS B & P costs, plaintiff would have received precisely the same total B & P payments under the advance agreements as it actually did for each of the years 1990–92. Because plaintiff, in effect, received no additional money as a result of bidding on and incurring B & P costs for CHEXS, it would seem that plaintiff has a compelling argument that the government's payments up to the ceilings under the advance agreements did not compensate plaintiff for its CHEXS B & P costs, *i.e.,* that plaintiff has not been compensated for "the expense to which [it] was put in preparing [its CHEXS] bid." *Heyer,* 135 Ct.Cl. at 69.

Defendant's argument to the contrary is based on the accounting procedures that plaintiff chose to employ with respect to B & P costs. In its accounting records, TRW Systems, apparently a subdivision of TRW Space, annually accumulated all B & P

costs, including CHEXS B & P costs, and transferred these costs to TRW Space. In turn, TRW Space annually accumulated TRW Systems' B & P costs along with other TRW Space B & P costs into a pool in which all B & P costs were treated generically, *i.e.*, the B & P costs were not allocated by project date or any other means. Given plaintiff's generic treatment of B & P costs, defendant argues that the CHEXS B & P costs cannot properly be distinguished from any of the B & P costs paid pursuant to the advance agreements and, therefore, the court should conclude that the $2.1 million in CHEXS B & P costs had been paid. Defendant argues that to identify separately CHEXS B & P costs at this time would treat CHEXS B & P costs differently from other B & P costs incurred by plaintiff, and would thereby violate Cost Accounting Standard (CAS) 402, 4 C.F.R. § 402 *et seq.*, which requires all similar costs to be treated in the same manner.

■ Defendant is incorrect for several reasons in its contention that plaintiff's accounting procedures require the court to conclude that the government has already paid $2.1 million of plaintiff's CHEXS B & P costs. First, the government apparently did not even consider plaintiff's decision to account for B & P costs on a generic basis when it calculated and paid the G & A-based payments to plaintiff. As explained above, the government made its payments during the course of each year pursuant to a provisional adjustment to the G & A rate based on plaintiff's *estimated* G & A and B & P costs for that year. Defendant has not suggested that the government ever adjusted this provisional rate to reflect actual rather than estimated costs. Because all payments were based on estimated total costs for a given year and not on actual B & P costs incurred, the court cannot conclude that the government made any of the G & A-based payments in reliance on plaintiff's internal accounting system for B & P costs or that the government intended any of the payments specifically to compensate plaintiff for its CHEXS B & P costs. Indeed, plaintiff apparently did not include any CHEXS B & P costs in its B & P estimates when it negotiated the ceilings contained in the advance agreements covering years 1990–92.

Second, if the court were to focus on plaintiff's accounting method, that method would still not support the conclusion that the government already paid plaintiff $2.1 million in CHEXS B & P costs. As explained above, for each year in issue, plaintiff's total pertinent B & P costs exceeded the ceiling in the applicable advance agreement and, therefore, plaintiff was not compensated for some of its B & P costs. For example, in 1991, the government apparently paid plaintiff up to the $177.5 million ceiling, but another $18 million went uncompensated. The essence of defendant's argument in support of summary judgment is that the entire $1.229 million in B & P costs that plaintiff incurred for CHEXS in 1991 should be considered part of the $177.5 million paid under the ceiling rather than as part of the $18 million unpaid above the ceiling. But defendant has not suggested any principled basis by which the court could reach such a conclusion. Indeed, because, as defendant stresses, TRW Space treated all B & P costs generically, it would seem inconsistent with such nondiscriminatory treatment to conclude arbitrarily that all of plaintiff's CHEXS B & P costs necessarily fell under the ceiling and were already paid.

■ Third, and most important, the proper focus in evaluating defendant's motion for partial summary judgment is on the damages plaintiff actually suffered as a result of defendant's breach of contract, not on plaintiff's internal method of accounting. Plaintiff alleges a breach of an implied-in-fact contract and defendant, for purposes of its motion, concedes that such a breach occurred. Therefore, the crucial issue before the court on summary judgment is whether defendant has fully compensated plaintiff for the damages that resulted from the breach. As to the measure of such damages, *Heyer* stands for the proposition that when the government fails to give fair and honest consideration to a contractor's competitive bid, the contractor is damaged because it would not have invested the B & P costs had it known that

the government would not evaluate its bid fairly and honestly. The *Heyer* court explained: "No person would have bid at all if he had known that 'the cards were stacked against him.' No bidder would put out [money] in preparing its bid ... unless it thought [its bid] was to be honestly considered." 135 Ct.Cl. at 69. Therefore, where the government fails to give fair and honest consideration to a competitive bid, the bidder is entitled to be made whole by securing as damages the B & P costs that it would have refused to "put out" had it known its bid would not receive fair and honest consideration. Thus, in effect, a bidder whose competitive bid is not given fair and honest treatment should be placed in the same position with respect to its B & P costs as it would have been had it never prepared a response to the solicitation.

Applying this standard to the instant facts, defendant is not entitled to summary judgment. As explained above, if plaintiff never submitted a bid proposal and never incurred $2.9 million in B & P costs on CHEXS, plaintiff still would have received the same total payments under the advance agreements as it did. Therefore, plaintiff has not been placed in the same position that it would have been had it never responded to the CHEXS solicitation; plaintiff has not been made whole for its CHEXS B & P costs.

■ This result is demanded by the reasoning of *Heyer*, and is not inconsistent with CAS 402. CAS 402 requires that all similar costs be treated in the same manner. As explained generally above, defendant contends that all of TRW Space's B & P costs, including its CHEXS B & P costs, were incurred in preparing bids to compete for contracts, and therefore, that all were incurred under "similar or like" circumstances and must be treated in the same manner. But even assuming for purposes

of argument that the costs were incurred in similar or like circumstances, this does not mean that it would be inconsistent with accounting standards for the court to permit plaintiff to recover the CHEXS B & P costs in a *Heyer*-type suit. If the court concludes that defendant breached its implied agreement and orders defendant to pay damages in the amount of plaintiff's B & P costs, then pursuant to 48 C.F.R. § 31.-201–5, plaintiff is obliged to credit the government in the form of a cost reduction for the amount of the recovery.[4] In plaintiff's accounting records, the amount of any B & P award therefore should be deducted from the indirect B & P cost pool for the fiscal year involved, and the net result would be as if plaintiff had never incurred the B & P costs for CHEXS. The ensuing change in plaintiff's accounting records with respect to total incurred B & P costs therefore would result solely from the necessity to give a credit for the B & P award, and not from any modification of plaintiff's established accounting methods. Hence, an award of B & P costs here would not result in similar costs being accounted for in a different manner in violation of CAS 402.

### V.

■ Defendant cites *AT & T Technology, Inc. v. United States*, 18 Cl.Ct. 315 (1989), for the proposition that a contractor whose bid was not treated fairly and honestly by the government is entitled only to recover the B & P costs that the bidder would have received had it been awarded the contract. Defendant then argues that had plaintiff been awarded the CHEXS contract, it could not have recovered any additional B & P costs because the advance agreements barred any B & P payments above the ceilings contained therein. But defendant relies upon quotations from *AT & T* taken out of context and, in any event, the proposed standard is not correct.[5] Un-

---

4. 48 C.F.R. § 31.201–5 states, in pertinent part: "The applicable portion of any income, rebate, allowance, or other credit relating to any allowable cost and received by or accruing to the contractor shall be credited to the Government either as a cost reduction or by cash refund."

5. When read in the context of the case law upon which the *AT & T* court relies, *AT & T* stands

merely for the proposition that a contractor whose bid is not evaluated fairly and honestly is not entitled to damages beyond its B & P costs, and that in assessing the amount of the recoverable B & P costs, the court should look to cost principles in the Federal Acquisition Regula-

der *Heyer*, to recover B & P costs there is no requirement that an unsuccessful bidder demonstrate that in fact it would have recovered its B & P costs had it been awarded the contract. The contractor need not show, for example, that the contract specifically allowed for the recovery of B & P costs,[6] or that the bidder ultimately would have made sufficient money on the contract to recover its B & P costs. Rather, it is sufficient that the government fails to treat a bid fairly and honestly, and that the bidder demonstrates that its bid was competitive, *i.e.*, "if the bid or proposal had been considered, there was a substantial chance that the [bidder] would receive an award—that it was within the zone of active consideration." *Morgan Business Associates, Inc. v. United States*, 223 Ct.Cl. 325, 332, 619 F.2d 892, 896 (1980).

## VI.

■ One last point warrants discussion. Defendant has not pointed to any wording in the advance agreements or any policy relating to government contracts that supports its basic position, *i.e.*, that advance agreements of the type here involved should be interpreted to preclude a contractor from recovering B & P costs through a *Heyer*-type suit even though (1) the ceilings in the advance agreements were not raised based on an anticipation of the B & P costs incurred, (2) the government has not made any payment specifically directed at these B & P costs, and (3) the B & P costs sought for a given year do not exceed the total amount of B & P costs incurred by the contractor *above* that year's ceiling.

With respect to the wording of the advance agreements, the agreements merely create an obligation on the government to pay plaintiff's B & P costs up to specified ceiling amounts. While the agreements do not create any obligation to pay costs above the ceilings, they also do not preclude a contractor from seeking to recover costs above the ceilings under an independent legal theory. There simply is no indication in the wording of the agreements that the parties considered the possibility of a *Heyer*-type suit, much less that the parties intended to preclude such a suit to recover B & P costs incurred above the payment ceiling.

Turning to government contract policy, the court recognizes that an advance agreement gives a contractor an advantage over contractors who lack such agreements in that a contractor with an agreement knows that if it bids on a government contract, it can recover some of its B & P costs even if its bid proves unsuccessful. But to the extent that such a contractor anticipates that it might incur total B & P costs that exceed the ceiling amount, the contractor with an advance agreement faces essentially the same economic decision as would any other contractor when deciding whether to prepare a proposal in response to a government solicitation. Both contractors recognize that preparing such a proposal would require the contractor to incur B & P costs and that any return on such an investment is speculative to the extent that the contractor may not win the contract. Since both types of contractors face essentially the same economic decision, each would seem to deserve the same level of legal protection when deciding whether to make a B & P investment in response to a government solicitation. Both equally should be able to rely upon the *Heyer* implied contract pursuant to which the government agrees to treat the bidder fairly and honestly, and, where a breach of that contract occurs, both equally should be restored to

---

tions and CAS, which would have applied had a contract been entered. *AT & T* does not focus on advance agreements covering B & P costs or how such agreements would affect a *Heyer*-type action. In any event, to the extent that *AT & T* is interpreted to articulate the standard defendant proposes, *AT & T* is simply wrong because it would be inconsistent with *Heyer* for all of the reasons set forth herein. *Heyer* is binding precedent on this court and *AT & T* is not.

6. Indeed, a *Heyer*-type suit is available where a contractor bids on a fixed-price contract. *See Continental Business Enterprises, Inc. v. United States*, 196 Ct.Cl. 627, 452 F.2d 1016 (1971); *Paxson Electric Co. v. United States*, 14 Cl.Ct. 634 (1988); *Hero, Inc. v. United States*, 3 Cl.Ct. 413 (1983). Such a contract typically does not include any provision specifically authorizing the contractor to recoup B & P costs.

the same position with respect to B & P costs as they would have been had they never prepared a response to the solicitation.

### Conclusion

Defendant has not demonstrated that it has paid $2.1 million of plaintiff's CHEXS B & P costs. In addition, assuming that defendant breached its contractual duty to treat plaintiff's proposal fairly and honestly, defendant has not demonstrated that the government's payment of additional B & P costs would in any sense represent an improper "windfall" to plaintiff. For the reasons set forth above, defendant's motion for partial summary judgment is denied.

IT IS SO ORDERED.