**TONYA, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1091C.**

United States Court of Federal Claims.

Aug. 4, 1993.

J. William Eshelman, Washington, DC, for plaintiff. Suzanne Langford Sanford of counsel.

John P. Sholar, Washington, DC, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, Jeanne E. Davidson and Martha H. DeGraff, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on cross-motions for summary judgment. Oral argument is deemed unnecessary. Plaintiff sought to recover bid preparation costs incurred in an attempt to negotiate a contract with the United States. For the reasons set forth below, plaintiff's cross-motion for summary judgment is denied and defendant's motion for summary judgment is granted.

### I. FACTS

In July 1988, defendant, the United States Department of the Air Force, through the Air Force Computer Acquisition Center, entered into a contract with Grumman Data Systems. The contract, entitled Headquarters Systems Replacement Program (HSRP), required Grumman to replace mainframe computers and convert existing computer programs for the 7th Communications Group at the Pentagon (7CG).

As it originally stood, the HSRP only provided for three "technical engineering management services" (TEMS) personnel. It soon became evident that the HSRP required an increase in personnel outside the scope of the original contract. As a result, on March 21, 1989, Grumman presented the Air Force with an unsolicited proposal entitled "Technology Upgrade Proposal for TEMS Personnel Upgrade," recommending the addition of eight TEMS categories. The Air Force rejected this proposal on June 7, 1989. However, soon thereafter the Director of Program Management for the HSRP noted that, while the current HSRP required Grumman to provide TEMS personnel to assist the Government in establishing and maintaining effective opera-

tions, "the current TEMS support provided lack[ed] sufficient breadth, technical expertise and familiarity with the software and hardware systems acquired for the HSRP."

In an effort to contract the needed support personnel, and in keeping with the policy of the Deputy Chief of Small Business for the Air Force District of Washington Contracting Office (AFDW) to review all new procurements for potential set aside under the Small Business Act's Section 8(a) Set Aside Program, 15 U.S.C. §§ 631–650 (1988), the Air Force met with fifteen Small Business Administration (SBA) approved Section 8(a) prospective contractors. Plaintiff, Tonya, Inc., was among the contractors selected.

On May 18, 1989, plaintiff's president met with 7CG technical personnel to discuss plaintiff's corporate and technical capabilities in connection with the proposed solicitation. On June 28, 1989, the AFDW wrote to the SBA requesting approval of plaintiff for a potential set-aside commitment. In this letter, the AFDW indicated the need for, among other things, eleven labor categories of TEMS support for the 7CG, six of which carried the same title as those proposed by Grumman in their unsolicited proposal. On July 10, 1989, the SBA approved the AFDW's petition, thereby clearing the Air Force to commence negotiations with plaintiff. Later that month, the Air Force issued solicitation documents to plaintiff.

After several initial meetings with the AFDW, plaintiff submitted a draft proposal on August 3, 1989. After review and evaluation, the Air Force returned the draft proposal with comments. In September 1989, plaintiff submitted a revised proposal dated August 15, 1989. In November 15, 1989, the Air Force suffered substantial budget cuts. On November 15, 1989, at a meeting between plaintiff and the AFDW, the AFDW told plaintiff that the Air Force had no work for them. Negotiations between the Air Force and plaintiff deteriorated and the Air Force eventually canceled the solicitation.

On December 20, 1989, the Air Force conducted a meeting with Grumman to discuss the addition of nine TEMS labor categories to the original HSRP. As a result of this meeting, Grumman presented the Air Force with a modification proposal on December 21, 1989. This proposal stated that the additional categories were "necessary to increase the skill level of TEMS personnel available to the Government to parallel the technology enhancements which [had] modified the [original] contract...." On December 26, 1989, the AFDW, wrote plaintiff and informed it that negotiations were being canceled due to "funding constraints" and that the Air Force intended to fulfill its personnel needs under the original HSRP. Inexplicably, plaintiff's contract file was destroyed approximately four months thereafter, in April 1989.

On April 16, 1991, plaintiff filed a complaint with this court claiming that the Air Force breached its implied obligation of fair and honest treatment of its solicitation with plaintiff, and asked for $269,750 in bid preparation costs. Plaintiff's case was originally assigned to Judge Andewelt. Defendant moved for summary judgment on August 12, 1992. On September 30, 1992, the case was reassigned to Judge Tidwell pursuant to RCFC 77(f). The court suspended the case on November 2, 1992, in response to plaintiff's request for extended discovery to adequately respond to defendant's motion. On May 17, 1993, after the additional discovery, plaintiff filed a supplemental response and cross-motion for summary judgment.

## II. DISCUSSION

### A. Summary Judgment

■ Summary judgment is appropriate when "the pleadings ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). A material fact is one which makes some difference in the outcome of a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Curtis v. United States*, 168

F.Supp. 213, 216, 144 Ct.Cl. 194 (1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959). In order to show that a material fact is genuinely at issue, the non-movant must do more than present "some" evidence on the disputed issue. *Anderson*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11. Conclusory statements are not sufficient to defeat summary judgement. *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed.Cir. 1984). "If the evidence [of the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). Because the court finds that there are no genuine issues of material fact in dispute, the case is properly before the court for disposition on cross-motions for summary judgment.

## B. Standard of Review

■ "The recovery of bid preparation costs is a remedy that has been available to unsuccessful bidders for at least the past 30 years." *Refine Constr. Co. v. United States*, 12 Cl.Ct. 56, 64 (1987). In *Heyer Products Co. v. United States (Heyer I)*, 140 F.Supp. 409, 413, 135 Ct.Cl. 63 (1956), the Court of Claims recognized "that the bidder [has] certain rights, and that the Government [is] under an obligation to respect those rights." As a result, the Government impliedly promises to give honest and fair consideration to all bids received and to not reject any of them arbitrarily or capriciously. *Refine Constr.*, 12 Cl.Ct. at 64 (citing *Heyer Prods. Co. v. United States (Heyer II)*, 177 F.Supp. 251, 147 Ct.Cl. 256 (1959)). The obligation of fair and honest treatment has also been implied in situations where a Section 8(a) company was involved under the Small Business Act's Set Aside Program. *See id.*

■ While an aggrieved bidder will be allowed to recover proposal costs if it is determined that its proposal was not treated honestly and fairly, *Keco Industries, Inc. v. United States (Keco I)*, 428 F.2d 1233, 1240, 192 Ct.Cl. 773 (1970), only an "aggrieved bidder who makes out a prima facie case of arbitrary and capricious action by the Government is entitled to a trial to prove the merits of his claim." *Continental Business Enters., Inc. v. United States*, 452 F.2d 1016, 1019, 196 Ct.Cl. 627 (1971). In order to overcome defendant's motion for summary judgment, plaintiff must put forth specific facts showing evidence of subjective bad faith on the part of the Air Force or that there is no reasonable basis for the Air Force to cancel the solicitation. *United States Fidelity & Guar. Co. v. United States*, 676 F.2d 622, 630, 230 Ct.Cl. 355 (1982); *Keco Indus., Inc. v. United States (Keco II)*, 492 F.2d 1200, 1203–04, 203 Ct.Cl. 566 (1974). Additionally, a "proven violation of pertinent statutes or regulations can, but need not necessarily, be ground for recovery." *Keco II*, 492 F.2d at 1204.

## C. Plaintiff's Claims

In its cross-motion for summary judgment, plaintiff alleged that (1) the Air Force's negotiations with plaintiff were merely a "pass-through" attempt to reach Grumman without the need for competitive bidding; (2) the Air Force's alleged "pass-through" attempt violated provisions of the Small Business Act and was therefore *per se* arbitrary and capricious; and (3) once the Air Force determined it could get to Grumman directly, it cancelled the negotiations.

### 1. Plaintiff's "Pass-through" Argument Is Not Material.

■ Plaintiff alleged that the Air Force intended to contract with Grumman, which would have required a new bidding process, and utilized the Section 8(a) Set Aside Program to circumvent the standard procurement requirements. Plaintiff argued that this alleged "pass-through" attempt breached the Air Force's implied obligation to consider plaintiff's proposal honestly and fairly because it already had a pre-determined contractor when it initiated the solicitation. *See, e.g., Heyer I*, 140 F.Supp. at 412–13. In support of its "pass-through" allegation, plaintiff argued that the Set Aside Program was less time consuming

than regular procurement and that the Air Force expected plaintiff to subcontract close to half of its work to Grumman. Because plaintiff's "pass-through" claim is immaterial, the court need not fully address either argument.[1]

■ The only issue before the court is whether the Air Force violated its duty to consider plaintiff's proposal fairly and honestly. Plaintiff may only recover if it can show by clear and convincing evidence that the Air Force intended to disregard plaintiff's bid *before* it initiated the solicitation. *Heyer I,* 140 F.Supp. at 414. Assuming the Air Force in fact intended plaintiff's solicitation to be merely a "pass-through" contract designed solely to obtain Grumman services without the need for competitive bidding, award of the solicitation to plaintiff would have been the obvious means of achieving that goal. As a result, even if plaintiff's argument were true, it would not show that the Air Force intended to disregard plaintiff's proposal before it initiated the solicitation, but rather that the Air Force intended to award the contract to plaintiff when it initiated the solicitation.[2] Therefore, plaintiff's "pass-through" argument is immaterial to the disposition of this case.

## 2. Defendant Did Not Violate the Small Business Act.

■ Plaintiff also argued that the Air Force, by allegedly expecting plaintiff to subcontract a portion of its work to Grumman, violated the intention of the Small Business Act. However, the facts and the law do not support plaintiff's position. Even if plaintiff's allegation that it was expected to subcontract a portion of its work to Grumman were true, the mere holding of such expectation does not constitute bad faith.

■ "[A] small business concern may subcontract a portion of a set-aside award to a large business concern...." 7 John C. McBride et al., *Government Contracts—Law, Administration & Procedure* § 48.-220[2] (1993). Federal Acquisition Regulations merely provide that "[a]t least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern." 48 C.F.R. § 52.219–14(b)(1) (1992); *see also* 15 U.S.C. § 644(*o*)(1)(A) (1988). Furthermore, decisions by the Comptroller General have consistently held that subcontracting up to 49% of the contract is not against the policy of the Small Business Act. *See, e.g., M.D. Oppenheim & Co., P.A.,* Comp.Gen.Dec. B–241252 (31 Jan. 1991) 91–1 CPD ¶ 98, p. 4; *Science Sys. & Applications, Inc.,* Comp.Gen.Dec. B–240311 (9 Nov. 1990) 90–2 CPD ¶ 381, pp. 7–8, *motion for reconsideration denied,* 91–1 CPD ¶ 22. Plaintiff has not implied that it was required to subcontract more than the allowed amount. In any event, plaintiff bears the burden of preventing an invalid "pass-through." The

---

1. In response to plaintiff's argument that a procurement under the Small Business Act's Set Aside Program would be less time consuming, the court notes that the Set Aside Program is subject to the same competition requirements as other procurements. *See* 10 U.S.C. §§ 2301–2305 (1988). As to plaintiff's argument that it was expected to subcontract a portion of its work to Grumman, the court notes that, although the government may have strongly encouraged plaintiff to subcontract part of the work to Grumman, the procurement itself did not require plaintiff to do so. In fact, the evidence indicates that the Air Force provided plaintiff with the names of at least three other companies who could perform the work required, and that plaintiff sought and received a subcontract proposal from at least one of the companies the Air Force identified.

2. Plaintiff argued that the Air Force destroyed its contract file four months after cancellation of the solicitation in order to conceal evidence which would substantiate its allegations that the Air Force intended the solicitation as a "pass-through" to reach Grumman. However, plaintiff failed to put forth specific facts to substantiate this allegation. Absent clear evidence to the contrary, this court must presume that the Air Force acted in good faith when it destroyed plaintiff's file. *See Librach v. United States,* 147 Ct.Cl. 605, 612, 1959 WL 7633 (1959) (citing *United States v. Chemical Found.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926)). In any event, as discussed above, even if plaintiff could somehow prove from the destroyed file contents that the Air Force intended the solicitation as a means of reaching Grumman without the need for competitive bidding, this would not prove that the Air Force was arbitrary and capricious vis-à-vis plaintiff in cancelling the solicitation.

Small Business Act expressly places upon the contractor, not the Air Force, the obligation to certify that the required percentage of the work will be performed by the small business contractor itself. *See* 15 U.S.C. § 644(*o*)(1)(A). As a result, even if plaintiff's allegations as to "pass-through" were true, the Air Force's expectation that plaintiff contract a portion of its work to Grumman, or any other contractor, would not violate the Small Business Act.

### 3. Cancellation of the Solicitation Was Not Unreasonable.

Plaintiff claimed that the Air Force canceled negotiations with it when the Air Force determined it could contract the same work directly from Grumman, the Air Force's allegedly pre-determined contractor, and was therefore arbitrary and capricious in the treatment of plaintiff's bid. In support of its claim, plaintiff argued that the December 21, 1989 modification of Grumman's original HSRP contract was clear evidence of its allegation because it required Grumman to perform substantially the same work plaintiff was to perform. While plaintiff alleged that six out of the nine categories specified in the modification coincide with those it negotiated with the Air Force, the majority of position descriptions called for in plaintiff's solicitation do not appear either in Grumman's original unsolicited proposal to the Air Force, or in the December 21, 1989 modification. In fact, the evidence shows that the Air Force had been negotiating twenty-five categories with plaintiff. Plaintiff did not allege that any of the additional categories were contracted to Grumman, or to any other contractor.

Defendant argued that the Air Force canceled the negotiations with plaintiff because it had insufficient funding for plaintiff's proposal. It is undisputed that the Air Force suffered substantial budget cuts in November 1989. Plaintiff may not recover costs if the Air Force's decision to cancel negotiations was based on budget cuts and the resulting lack of funds. "[A]n agency has an unquestioned legal right to cancel solicitations because of lack of funds since the management of an agency's funds generally depends on the agency's judgment concerning which projects and activities shall receive increased or reduced funding." *Cellular Prod. Serv., Inc.,* Comp.Gen.Dec. B–222614 (3 July 1986) 86–2 CPD ¶ 32, p. 2 (citing *Somers Constr. Co., Inc.,* Comp.Gen.Dec. B–193929 (24 July 1979) 79–2 CPD ¶ 54). It is clear that cancellation of a solicitation because of a budget reduction is reasonable. In fact, the Anti–Deficiency Act, 31 U.S.C. § 1341 (1988), prohibits the Air Force from awarding a contract in the absence of adequate appropriated funds to support the award.

While it is unfortunate that plaintiff incurred costs in pursuit of the original solicitation, "this fact has no bearing on the propriety of the cancellation." *Cantu Servs., Inc.,* Comp.Gen.Dec. B–233697 (27 Mar. 1989) 89–1 CPD ¶ 306, p. 3. It is but one of the risks faced when contracting with the government. As indicated above, plaintiff may only recover if it can show by clear and convincing evidence that the Air Force intended to disregard plaintiff's bid *before* it initiated the solicitation. *Heyer I,* 140 F.Supp. at 414. Plaintiff has not provided the court with any evidence to suggest that the Air Force intended to disregard plaintiff's proposal before it initiated the solicitation. As a result, plaintiff has failed to show that the Air Force was arbitrary and capricious when it decided to cancel negotiations with plaintiff.

### III. CONCLUSION

Based upon the facts and law set forth above, the court finds that plaintiff did not provide adequate evidence to meet its burden to show that the Air Force fraudulently induced its proposal. As a result, plaintiff may not recover its bid preparation costs. Accordingly, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court is directed to dismiss plaintiff's complaint. Costs to defendant.

**IT IS SO ORDERED.**